TRUSTEES OF BERKELEY DIVINITY SCHOOL *vs.* WILLIAM JARVIS
AND ANOTHER.

Where a voluntary subscription has been made for a charitable object, and the persons having the charity in charge have, in consequence of the subscription, fairly and reasonably made advances or incurred expenses for the benefit of the charity, the subscription will be binding.

And it seems that where such a subscription is one of several mutual and dependent subscriptions, it may be sustained on that ground.

Where a failing debtor makes a conveyance void as against creditors under the insolvent law, it can not be set aside by such creditors except by proceedings under the insolvent law.

BILL for a foreclosure of two mortgages. The respondent French had attached and levied an execution upon the mortgaged premises as a creditor of Jarvis the mortgagor, and by his answer claimed that the mortgages were given without consideration and that they were also void against creditors as being given by the mortgagor in failing circumstances and to give a preference to the mortgagees over other creditors. Jarvis, the mortgagor, made no defence. The superior court upon these pleadings found the following facts.

Early in the year 1854 one Edward S. Hall, for the purpose of securing the establishment in the city of Middletown of an Episcopal Theological Institution, agreed with Bishop Williams, of the Diocese of Connecticut, to contribute towards the establishment and support of the institution the sum of $20,000. Bishop Williams immediately thereafter, with the view of raising funds sufficient with the amount so promised to make the sum of $40,000, and of thereby securing the establishment of the institution, addressed a letter to the respondent Jarvis, soliciting his aid in the enterprise, and received from him a reply in which he promised to contribute towards the object the sum of $10,000. Jarvis was then possessed of large wealth, and was unembarrassed, and so continued down to the period hereinafter stated. In reliance upon the promises of Hall and Jarvis active efforts were immediately thereafter made by Bishop Williams and others friendly to the project to procure from the General Assembly

an act of incorporation for the institution, which was obtained under the name of the Berkeley Divinity School. The act of incorporation among other things provided that whenever funds to the amount of $40,000 should be contributed or secured, and not before, the trustees might proceed to organize the institution in the city of Middletown. In furtherance of the object, and in consideration of the promises of Hall and Jarvis, which were the basis upon which the subsequent funds were obtained, and in the faith that these promises would be fulfilled, Bishop Williams and Rev. F. J. Goodwin, of Middletown, pledged themselves to pay considerable sums towards the fund, and solicited sundry other persons to contribute, who did severally by subscription or otherwise promise to contribute towards the same; and as an inducement to such other persons to so contribute, the Bishop and Rev. Mr. Goodwin stated to them the amounts promised by Hall and Jarvis; which representations operated to induce and secure the subsequent subscriptions, and the same were made on the faith that the large sums so pledged by Hall and Jarvis would be paid. Additional funds to an amount sufficient, including the $10,000 subscribed by Jarvis, and not otherwise, were thus procured to be promised, and were promised by sundry persons, to enable the trustees to organize the institution; and fully relying on all these promises the trustees did, in the month of October, 1854, organize the institution pursuant to the act of incorporation. The first meeting of the trustees was held immediately after, and Jarvis was appointed secretary and treasurer of the corporation, and by successive annual re-elections was continued in these offices till January, 1858. Soon after the organization the trustees on the faith of the subscriptions contracted for the use of necessary apartments for the occupation of students who were about to become members of the institution, and became liable to pay for the same an annual rent of $300, and in like manner several professorships and lectureships were established, with salaries varying from $50 to $600 each, and incumbents were appointed thereto; and the rent and salaries and all the other incidental expenses were paid by the trustees from the income

and avails of the funds pledged, as the same matured. In 1858 the said Hall, in payment of the sum of $10,000 towards the amount promised by him, conveyed to the corporation the land and buildings which they had previously rented for the purposes of the institution, and the corporation has since been the owner in fee, and has continued to occupy the same for the same purposes. Jarvis semi-annually paid to the corporation the interest on the $10,000, from the first day of September, 1854, until the first day of January, 1856. Some time in the autumn of 1855 he executed to the corporation the notes described in the petitioners' bill, for the security of which the mortgages hereinafter mentioned were by him given to the petitioners. The consideration for the notes was the promise by him to pay the $10,000 towards the funds of the institution. These notes were executed by him and with the intention on his part of paying them according to their tenor. These notes, with the other evidences of property belonging to the corporation, were held by Jarvis as treasurer of the corporation, while he remained the incumbent of that office. The last payment of interest by Jarvis was made July 1, 1857, to cancel the amount then accrued and due, and nothing on account of either interest or principal has since been paid on either of them.

On or shortly before the 12th of August, 1857, Jarvis became insolvent, and so has ever since continued. All his obligations then outstanding were made subsequently to his execution of the two notes to the petitioners. On the 12th of August, 1857, Jarvis executed and delivered to the Berkeley Divinity School the two mortgage deeds referred to in the bill, to secure to the corporation the payment of his two notes. He executed and delivered the mortgage deeds with no fraudulent intent towards his creditors except what is legally inferable from his having executed them when in failing circumstances and actually insolvent and with the design to prefer the corporation over his other creditors. No assignment was at any time subsequently made by Jarvis, and no compulsory proceedings in insolvency instituted by any creditor against him. On the 22d of January, 1859, the respond-

ent French, who held sundry notes endorsed by Jarvis, and which were outstanding on the 12th of August, 1857, and had never been paid, caused the lands mortgaged by Jarvis to the corporation to be attached in a suit brought by him against Jarvis on the notes, and in October, 1860, obtained judgment in the suit for the sum of $8,013.95 damages and $93.28 costs, and took out execution on the judgment and caused it to be levied upon the lands, and they were set off to him thereupon, without reference to, or any deduction on account of, the mortgages to the corporation. The value of the mortgaged premises is $8,250.

Upon these facts the superior court (*Phelps, J.,*) passed a decree of foreclosure in favor of the petitioners. The respondent French filed a motion in error and brought the record before this court for revision, assigning the following errors :—1st. That upon the facts found the original agreement to subscribe made by Jarvis was not valid as against him, nor was it affected by his giving the notes mentioned in the finding. 2d. That upon the facts found said agreement to subscribe and said notes were never valid as against the respondent French as a creditor of Jarvis. 3d. That upon the facts found, the mortgages, being given in the manner and under the circumstances found by the court, were in law fraudulent and void as against the respondent French and not binding on him.

*T. C. Perkins* and *C. E. Perkins*, for plaintiff in error.

The sole question in this case is, can those who were the creditors of Jarvis when these mortgages were given and who have obtained a lien on the land mortgaged by attachment and levy of execution, be deprived of that lien by these petitioners. We say that they can not, because these mortgages as against them were in law fraudulent and void, the notes to secure which they were given being without any consideration.

1. They were merely a gift, and upon the facts found could not have been collected by the petitioners even from Jarvis himself. There were at one time decisions that such gifts were valid if several of them were made, each invalid

promise validating all the others. But these decisions, never thoroughly established as law, are now overruled, and the true principle has been adopted, that where money has been advanced or liabilities incurred in reliance upon subscriptions the donor is estopped from denying that there was a consideration. 1 Parsons on Cont., 378 ; *Barnes* v. *Perine,* 2 Kernan, 18, 30 ; *Trustees of Hamilton College* v. *Stewart,* 1 Comst., 581 ; *Phipps* v. *Jones,* 20 Penn. S. R., 260 ; *Gittings* v. *Mayhew,* 6 Maryl., 113 ; *Robertson* v. *March,* 3 Scam., 198 ; *Galt* v. *Swain,* 9 Gratt., 633 ; *Collier* v. *Baptist Education Society,* 8 B. Monr., 68 ; *Doyle* v. *Glasscock,* 24 Texas, 200. All the decisions in which the old rule was followed are based upon those in Massachusetts, and a review of those will show that it never was really established even there. Of the nine cases four are opposed to it, and each of the other five differ from the others in the reasons assigned. *Boutell* v. *Cowdin,* 9 Mass., 254 ; *Phillipps Limerick Academy* v. *Davis,* 11 id., 113 ; *Trustees of Farmington Academy* v. *Allen,* 14 id., 172 ; *Bridgewater Academy* v. *Gilbert,* 2 Pick., 579 ; *Trustees, &c. in Hanson* v. *Stetson,* 5 id., 506 ; *Amherst Academy* v. *Cowls,* 6 id., 427 ; *Thompson* v. *Page,* 1 Met., 565 ; *Ives* v. *Sterling,* 6 id., 310 ; *Walkins* v. *Eames,* 9 Cush., 537. The question now arises for the first time in this state, and this court should follow the later decisions, which are consitent with the well settled rules of law. The court finds that the petitioners have never advanced money or incurred liabilities beyond the amount of money received. They have only expended what they received.

2. Even if the mortgages could be enforced against Jarvis they are not good against those who were creditors at the time. Voluntary conveyances are always void against creditors, even when valid as between the parties and as to all the rest of the world. The rule is, that if fully executed while the grantor is not indebted they are good, if not, they are bad. Roberts on Fraud. Conveyances, 438. Courts of equity especially favor creditors. 1 Story Eq. Jur., §§ 350, 352. Even before charities. Roberts on Fraud. Conveyances, 439. There are many cases where deeds given by debtors in pur-

suance of prior voluntary agreements to give them, made when they were not indebted, have been held void against creditors. *Rucker* v. *Abell*, 8 B. Monr., 566 ; *Davis* v. *McKinney*, 5 Ala., 719 ; *Lewis* v. *Caperton*, 8 Gratt., 148 ; *Harrison* v. *Carroll*, 11 Leigh, 476 ; *Albert* v. *Winn*, 5 Maryl., 66. As far as creditors are concerned the real gift was when the mortgage was delivered. That was the time when they lost their security. If Jarvis had gone into insolvency on that day these petitioners could not have presented their claims against his estate and shared in the assets.

3. It does not affect the case that the liabilities of Jarvis at the time he executed the mortgages were contingent ones, being indorsements upon paper that had not then matured. They were none the less debts. A contingent liability that may become absolute is a debt. *McLaughlin* v. *Bank of Potomac*, 7 Howard, 220, 229.

4. The petitioners come asking the interposition of a court of equity to deprive us of our lien. We stand on higher ground than they. We have parted with our money relying on this very property of Jarvis, it may be. They have parted with nothing and only need this money to extend their operations. Even if they had incurred debts or expended money, they would be no worse off than before, for they would have that which they purchased, but we shall lose everything. A court of equity will not interfere to aid such an inequitable proceeding.

*C. Hawley* and *C. Chapman*, for defendants in error.

1. French, the only party contesting, claims that the mortgages are, as against him as a creditor of Jarvis, void for want of sufficient consideration. But he can not take this objection, for Jarvis, when he made the subscription, and when he gave the notes to secure which the mortgages were given, all having been done in good faith and through the most laudable motives, was most abundantly solvent and of large wealth. His indorsements, out of which French's claims arise, were made a long time afterwards. 1 Story on Cont., § 527 ; *Holloway* v. *Millard*, 1 Maddock Cha. R., 412 ; 1 Story Eq.

Jur., § 356, *et seq.* None of the indorsed notes had matured until after even the mortgages were given. Had the indorsements been made before the notes to the petitioners were given, they would not *while contingent* have constituted the holder of the indorsements a creditor who could in any event have set the mortgages aside, even had the notes been given without valuable consideration, Jarvis being wealthy and unembarrassed by debts at the time. *Fales* v. *Thompson*, 1 Mass., 134; 1 Story Eq. Jur., § 356; *Van Wyck* v. *Seward*, 6 Paige, 62. And French is not a bona fide holder because he took the notes after their dishonor.

2. But the notes, and consequently the mortgages given to secure them, were given for a *valuable consideration* sufficient to sustain them against any creditors. 1st. There was a valuable consideration in the grant of the charter by the General Assembly. It was granted on condition of the contribution or the securing of the sum of $40,000, and not before that sum was contributed or secured was the corporation empowered to organize and establish the school. That sum was, including Jarvis's subscription, duly raised and secured pursuant to the terms of the grant and for the very purpose of the purchase from the state of the corporate powers offered by the charter. These powers thus offered, purchased, and accepted, were and are *valuable* in the highest and best legal sense of that word, vastly more valuable in view of the benefits the public derive from their exercise than any mere ordinary pecuniary consideration. The $40,000 being thus the *purchase money* of very important powers, places this case on grounds, in all respects material to the question here, higher than as well as entirely distinct from mere gratuitous donations to institutions *already in existence*, or to general or specified existing educational objects, or generally to the advancement of religion, morals, or science. 2d. The subscriptions were mutual, each person subscribing in view and for the purpose of raising the sum of $40,000 for the purchase of the corporate powers, and in consideration of the other subscriptions made for the same purpose. Chitty on Cont., 46, note; *Whitestown Religious Society* v. *Stone*, 7 Johns., 112.

3d. Jarvis has in every way recognized and sanctioned his subscription by the payment of interest and otherwise, and this since the corporation went into operation. 4th. The corporation was not only enabled but *induced* by the subscriptions to organize and go into operation, to engage in the execution of the trust and the discharge of the duties reposed in and imposed on it, and it has in faith of and reliance on the subscriptions, including Jarvis's, made large purchases, employed instructors, and otherwise made great expenditures and incurred large liabilities. Story on Cont., § 453 ; *Fisher* v. *Ellis*, 3 Pick., 322 ; *Trustees of the Church in Hanson* v. *Stetson*, 5 id., 506 ; *Amherst Academy* v. *Cowls*, 6 id., 427 ; Chitty on Cont., 30 ; *Forster* v. *Fuller*, 6 Mass., 58 ; *Sumner* v. *Williams*, 8 id., 200 ; *Lent* v. *Padelford*, 10 id., 230 ; *Davenport* v. *Mason*, 15 id., 85 ; *Robertson* v. *March*, 3 Scam., 198 ; *Caul* v. *Gibson*, 3 Penn. S. R., 416 ; *George* v. *Harris*, 4 N. Hamp., 533 ; *Troy Congregational Society* v. *Perry*, 6 id., 164 ; *University of Vermont* v. *Buell*, 2 Verm., 48 ; *State Treasurer* v. *Cross*, 9 id., 289 ; *Commissioners of Canal Fund* v. *Perry*, 5 Hammond, 57 ; *Thompson* v. *Page*, 1 Met., 565 ; *Somers* v. *Miner*, 9 Conn., 458, 466.

3. There is nothing in our laws relating to insolvent estates which affects the case. If the mortgages were void under that law they could be set aside only by proceedings taken under that law. No such proceedings were taken.

DUTTON, J. Bishop Williams and other prominent Episcopalians wished to establish a Divinity School in this state. To accomplish this object, and also to secure the location of it in Middletown, Edwin S. Hall promised to advance $20,000, and the defendant Jarvis $10,000, with the understanding that subscriptions to the amount of $40,000 in the whole were to be procured. The promise of Mr. Jarvis was made with the knowledge that Hall had promised $20,000, and was induced in part by the knowledge of that fact. The promise was made in writing, and put into the hands of the bishop to enable him to procure other subscriptions. Relying upon it he subscribed

himself and procured subscriptions from others. Jarvis was then possessed of a large estate, but he became insolvent before the mortgage deed described in the petition was given.

Relying upon the subscriptions which had been obtained, the bishop and others applied to the legislature of this state, and obtained an act establishing a corporation by the name of the Berkeley Divinity School. It was authorized to organize the institution whenever $40,000 were raised, and not before. This amount was secured by using the subscriptions of Hall and Jarvis to induce others to subscribe. The amount was raised and the institution organized. Apartments for the use of students were rented and professorships and lectureships with salaries established.

Mr. Hall paid half of his subscription by a deed of land to the corporation. Mr. Jarvis recognized his promise as a promise to the corporation, by taking the office of treasurer of the corporation, and paying for several years the interest on his subscription.

The defendant French is a creditor of Jarvis. The liability to him was incurred after the subscription, but before the mortgage to secure it was given. French has levied an execution on the land embraced in the mortgage, claiming that the deed was void against him as a creditor of Jarvis.

The petitioners have raised a question whether French was a *bona fide* creditor. It is unnecessary to examine that point, as we are clearly of the opinion that the mortgage deed is valid against creditors of every description.

The respondent French insists that the promise of Jarvis to pay the $10,000 was without consideration, and consequently that the mortgage deed was in the nature of a mere gift. If this claim is correct both the promise and the mortgage would of course be set aside in favor of the levy of a *bona fide* creditor. But we are satisfied that there was a sufficient consideration to sustain the validity of the promise. We have recently had the subject of the sufficiency of considerations before us in the case of *Rice* v. *Almy*, 32 Conn., 297.

In the first place, here were mutual dependent promises. It was understood that Jarvis was not to become liable unless

other promises to pay, to the extent in the whole of $40,000, were obtained. Such a consideration has repeatedly been held to be sufficient. *George* v. *Harris,* 4 N. Hamp., 533 ; *Amherst Academy* v. *Cowls,* 6 Pick., 427. The doctrine has been denied by a modern author of high standing. 1 Parsons on Contracts, 454. It is unnecessary to rely upon it in the present case, for it is well settled that where advances have been fairly and reasonably made or liabilities incurred by others in consequence of a voluntary subscription for a charitable purpose, the subscription will be binding. 1 Parsons on Cont., 458 ; *Bryant* v. *Goodnow,* 5 Pick., 228. In *University of Vermont* v. *Buell,* 2 Verm., 48, the defendant had with others signed a subscription to aid in erecting college buildings. The corporation of the college, relying upon the subscriptions, commenced erecting the college buildings, and the court held that the defendant was liable on his subscription. The analogy between that case and the present is very striking. Relying to a great extent without doubt on the subscription of Jarvis, the friends of the new institution devoted time and incurred expense in procuring a charter from the legislature, and subsequently the corporation, which now brings this suit, organized the school, contracted for apartments for the students and became liable for the rent of the same, and established several professorships and lectureships with certain salaries attached thereto. Here are all the elements of a good consideration. Jarvis allowed his promise to remain unrevoked, although knowing that the corporation was parting with what was valuable on the strength of it. Here would be a loss to the promissee if the promise should not be enforced.

It has been suggested that the finding shows that the corporation has already received payments to the extent at least of all the expenses which it has yet incurred, and therefore it would sustain no loss. But this would be too strict a construction of the language of the finding. From the nature of the case professorships and lectureships are not temporary, and must be regarded as still existing. If they

were not to last for a period of years the school could not be said to be established.

We have made no allusion to the importance and public benefit of such institutions and of this in particular. They have always been justly regarded by courts with favor. The present case. needs no aid from such considerations.

The petitioners are to be regarded as *bona fide* creditors. As Jarvis could have been compelled to pay this subscription, he had a perfect right to secure it. It is immaterial whether he was at the time of giving the mortgage insolvent or not. If it was giving a preference to the petitioners, advantage could be taken of it only by proceedings under the insolvent law.

We advise a decree in favor of the petitioners.

In this opinion the other judges concurred.