NORTH ECCLESIASTICAL SOCIETY IN HARTFORD vs. WILLIAM N. MATSON.

The defendant, a member of an ecclesiastical society, and others, subscribed a writing whereby they promised to pay to the society's treasurer the sums annexed to their names for the purpose of purchasing certain land belonging to D, and erecting a church edifice and lecture room thereon, provided that not less than $60,000 should be subscribed to the same writing within thirty days from its date. The society had agreed with D to purchase the land for $27,000, and D had agreed to subscribe $10,000 towards payment for the land and the cost of erecting a church edifice and lecture room. The society afterwards purchased the land of D at the price named, and D subscribed to the writing signed by the defendant $10,000, which was applied toward payment for the land. I also subscribed $1,000 to the same writing, with the condition annexed to his subscription "that no bell should ever be put on the church." The society afterwards voted to accept I's subscription upon the condition annexed to it, and the defendant afterwards promised the society's committee that he would pay his subscription when convenient. Before the commencement of the suit the society had erected a lecture room, and laid the foundation for a church edifice. Held, 1. That there was a sufficient consideration for the defendant's promise. 2. That he had waived any objection to the validity of his subscription growing out of the condition attached to I's subscription. 3. That no valid objection could be made to the subscription of D. 4. That subscriptions upon other subscription papers drawn in the same terms and having the same object, were to be considered as subscriptions to the "same writing" which was signed by the defendant.

ASSUMPSIT, brought to the Superior Court in Hartford County, upon the following instrument:—

"We the undersigned promise to pay to the Treasurer of the North Ecclesiastical Society in Hartford the sums annexed to our respective names (within thirty days after notification by the building committee that may hereafter be appointed by said society that payment of the same is required,) for the purpose of purchasing the lot or lots on the corner of Asylum and High streets, in said Hartford, belonging to Austin·Dunham, and erecting a church edifice and lecture room threon. *Provided*, that a sum not less than sixty thousand dollars shall be subscribed hereto by responsible persons within thirty days from the date hereof. Hartford, June 13, 1864.     Wm. N. Matson, one thousand dollars."
                                                                and others.

The declaration contained a special count, and the counts for money laid out and expended, and upon an account stated.

The special count alleged, as the consideration of the defendant's promise, a promise by the plaintiffs to purchase the land described in the above instrument and erect thereon a church edifice and lecture room, and as a further consideration, " certain other subscriptions and promises by said writing evidenced," and " various good and valuable considerations of increased prosperity and usefulness of the said church and society of which the defendant was a member."

Upon the trial in the Superior Court on the general issue, substantially the following facts were found by the court.

The instrument declared on was subscribed by the defendant and others with different sums annexed to their names, within thirty days after the 13th day of June, 1864. Among the subscriptions subsequent to the defendant's subscription were the following: " Austin Dunham, Ten Thousand Dollars;" and " L. C. Ives, One Thousand Dollars, conditioned that no bell shall ever be put on the church."

This writing was contained in a small book. Within thirty days after the 13th day of June, 1864, other persons subscribed two other writings, each in the same words with the writing signed by the defendant, contained in two other similar books, with different sums annexed to their names. The aggregate amount of the sums subscribed to the three writings, including the subscriptions of Dunham and Ives, was Sixty Thousand Dollars.

The defendant objected to the admission in evidence of all or any of the three writings, but the court admitted them.

The plaintiffs also offered in evidence another writing contained in another similar book, in the following words:

" Hartford, April 15th, 1865. We the undersigned promise to pay the Treasurer of the North Ecclesiastical Society in Hartford the sums annexed to our respective names, on condition that the sum of Twenty-five Thousand Dollars

be subscribed, payable in twelve, eighteen, and twenty-four months from date. Any subscriber preferring to pay in full or in part before the period named above, shall be allowed a discount at the rate of seven per cent. per annum."

Subscriptions were obtained to this writing to the amount of Twenty-five Thousand Dollars. The defendant objected to the admission of the writing in evidence, but the court admitted it.

On the 13th day of June, 1864, the plaintiffs passed the following vote:

"Whereas, on the 13th day of April last, a vote was passed by this society appointing a committee to purchase the lot or lots on the corner of Asylum and High streets, in this city, for the purpose of erecting a church edifice and lecture room thereon, said purchase conditioned in part that a sum not less than Seventy Thousand Dollars should be raised for said purpose within sixty days from that date, which amount of subscription had not been obtained within the time specified; and whereas the owner of said lot consents to renew the offer on the terms named in the following vote, therefore,

"*Voted*, That O. G. Terry, John L. Bunce and Drayton Hillyer be a committee to purchase the lot or lots on the corner of Asylum and High streets in this city, belonging to Austin Dunham, on the terms he now proposes, viz: for Twenty-seven Thousand Dollars, towards payment of which and the cost of erecting a church edifice and lecture room thereon said Dunham agrees to subscribe the sum of Ten Thousand Dollars; the purchase of said lot being further conditioned, that within thirty days from this date a sum not less than Sixty Thousand Dollars, including the amount subscribed by Mr. Dunham as above stated, shall be raised by voluntary subscription for the aforesaid purpose of purchasing said lot and building thereon.

"*Voted*, That O. G. Terry, John L. Bunce, and Drayton Hillyer be a committee to select and nominate to a future meeting a committee for procuring plans for a new church edifice, and also a building committee."

The committee named in the vote afterward made the contract with Dunham which the vote authorized them to make, and Dunham subscribed the sum of Ten Thousand Dollars upon the terms and conditions named in the vote, and the plaintiffs, on the first day of July, 1864, purchased the lot of Dunham for Twenty-seven Thousand Dollars, and paid him therefore Seventeen Thousand Dollars, applying the other Ten Thousand Dollars to the payment of his subscription according to the contract.

On the 14th day of March, 1866, the plaintiffs passed the following vote :—

" Whereas Lawson C. Ives has subscribed the sum of three thousand dollars toward the erection of the church edifice now being built by or for this society on land situated on the corner of Asylum and High streets, which said subscription was made by the said Ives upon the express condition that no church bell or other instrument designed or used for calling people together shall be used, hung, or placed in or upon said church edifice or any structure connected therewith, or upon said premises upon which said church is now building, for the period of twenty years from and after the occupation of said church edifice ; and which said subscription was made by said Ives in reliance upon the agreement contained in the following vote ; therefore,

" *Voted,* That this society do accept said subscription of the said Ives upon the aforesaid condition; and in consideration of said subscription, this society does hereby promise and agree to and with said Ives, his heirs and assigns, that no church bell or any instrument whatever, designed or used for calling people together, shall be used or placed in or upon said church edifice, or any edifice connected therewith, nor upon said premises, for the period of twenty years from or after the occupation of said church edifice."

The sum of three thousand dollars referred to in this vote included the sum of one thousand dollars subscribed by Ives to the first named writing, and the sum of two thousand dollars subscribed by him to the writing of April 15th, 1865.

The defendant was a member of the North Ecclesiastical

Society on the 13th day of June, 1864, and at the commencement of this suit.

A building committee duly appointed by the society, more than thirty days before the commencement of this suit notified the defendant that payment of his subscription was required, and the defendant afterwards promised certain members of the committee who personally asked him to pay his subscription that he would do so when convenient.

The plaintiffs at the time this suit was commenced had erected a lecture room and laid the foundation for walls of a church on the lot purchased of Dunham.

Upon these facts the following questions were reserved for the advice of this court. 1. What is the legal effect of the conditions annexed to the subscriptions of Ives and Dunham, and has the condition in the contract upon which it was to become operative been complied with so as to render the defendant liable to pay his subscription. 2. Was the evidence objected to by the defendant legally admissible. 3. What judgment ought to be rendered.

*Owen*, for the plaintiffs, cited, as to the sufficiency of the consideration, as alleged and proved, *Somers* v. *Miner*, 9 Conn., 460 ; *Berkeley Divinity School* v. *Jarvis*, 32 id., 412 ; *Rice* v. *Almy*, id., 297 ; *Graff* v. *Pittsburgh & Steubenville R. R. Co.*, 31 Penn. S. R., 489 ; *Stewart* v. *Trustees of Hamilton College*, 2 Denio, 403 ; *S. C.*, 1 Comst., 584 ; *Franklin College* v. *Hurlburt*, 28 Ind., 344 ; 1 Parsons on Cont., 453, *note* ; *Wayne & Ontario Collegiate Institute* v. *Smith*, 36 Barb., 576 ; *M'Donald* v. *Gray*, 11 Iowa, 508 ; *Central Turnpike Co.* v. *Valentine*, 10 Pick., 142 ; *McLellan* v. *Morris*, Kirby, 145. As to the Ives subscription, *Mann* v. *Cook*, 20 Conn., 178 ; *Leonard* v. *Dyer*, 26 id., 172 ; *Litchfield Bank* v. *Church*, 29 id., 137 ; *Danbury & Norwalk R. R. Co.* v. *Wilson*, 22 id., 435 ; *Thomas* v. *Fleury*, 26 N. York, 26 ; *Barret* v. *Alton & Sangamon R. R. Co.*, 13 Ill., 504 ; *M'Auley*, v. *Billenger*, 20 Johns., 89 ; *North Missouri R. R. Co.* v. *Miller*, 31 Misso., 19 ; *Spartanburgh & Union R. R. Co.* v. *De Graffenreid*, 12 Rich. (Law,) 675 ; *North Missouri R. R. Co.* v. *Winkler*, 29 Misso., 318 ; *Pittsburgh & Steu-*

*benville R. R. Co.* v. *Biggar*, 34 Penn. S. R., 455; *Miller* v. *Pittsburgh & Connelsville R. R. Co.*, 40 id., 237; *Thornberry* v. *Prescott*, 23 Ind., 518; *O'Donald* v. *Evansville &c. R. R. Co.*, 14 id., 259; *New Albany & Salem R. R. Co.* v. *McCormick*, 10 id., 499; *Phillips* v. *Covington & Cincinnati Bridge Co.*, 2 Met. (Ky.,) 219; *Troy & Greenfield R. R. Co.* v. *Newton*, 8 Gray, 596; *Pordage* v. *Cole*, 1 Saunders, 320 b; *London & Brighton R. R. Co.* v. *Wilson*, 6 Bing. N. C., 135; *Blodgett* v. *Merrill*, 20 Verm., 509; *Conn. & Passumpsic Rivers R. R. Co.* v. *Bailey*, 24 id., 465. As to waiver and estoppel, *Pond* v. *Clark*, 24 Conn., 370; *North Carolina R. R. Co.* v. *Leach*, 4 Jones, (Law,) 340; *City of London* v. *Vanacker*, 1 Ld. Raym., 500; 1 Swift's Dig., 756; 2 Phill. Ev., 295, note 343; Id., 693-6, notes 505-7.

*F. Fellowes* and *C. E. Fellowes*, for the defendant.

1. The evidence objected to is inadmissible. The writing subscribed by the defendant is inadmissible because it furnishes no proof of the contract set out in the declaration. It furnishes no proof of the first allegation of consideration. *Trustees of Hamilton College* v. *Stewart*, 1 Comst., 581. The same is true of the second allegation of consideration, and it is also true of the second and third allegations that they contain no sufficient statement of a legal consideration. The declaration should state what those " other promises and subscriptions" and those " good and valuable considerations" are, in order that it may appear on the face of the declaration that a sufficient legal consideration exists. But such mutual promises of subscribers, if sufficiently alleged and proved, constitute no consideration for the defendant's promise. 1 Parsons on Cont., 454; *Trustees of Hamilton College* v. *Stewart*, 2 Denio, 403; *S. C.*, 1 Comst., 584. Besides, proof of this consideration alone would be insufficient. The entire consideration alleged must be proved. 1 Chitty Pl. 299; *Rice* v. *Almy*, 32 Conn., 297. The writings similar to that signed by the defendant, but contained in other books, are inadmissible for the purpose for which they were offered,

viz: to prove that the $60,000 had been subscribed, and that the condition of the defendant's promise had therefore been fulfilled. These writings, though in similar words, are not the contract which the defendant subscribed. It does not appear that he knew of their existence. Subscriptions to them are not subscriptions " hereto " in the sense of the condition of the defendant's promise. The writing of April 15, 1865, has no reference to that declared on and is clearly inadmissible for any purpose.

2. The condition of the defendant's promise, that $60,000 should be subscribed in thirty days, has not been fulfilled. This condition is a condition *precedent*, and must be proved to have been fulfilled, or the plaintiffs cannot recover either on the special or the common counts. As to the count for money paid at the defendant's request, the only evidence of such request is the special contract declared on. This is inadmissible for this purpose. *Bridgewater Academy* v. *Gilbert*, 2 Pick., 579. But if admissible it proves a request and promise coupled with the condition annexed. As to the count upon an account stated, the only evidence offered was the promise of the defendant to members of the building committee. This promise is not a new promise, made upon a new consideration, giving a new cause of action, but merely a reaffirmance of the former contract, and of course is coupled with the condition annexed to that contract. Where there is a special agreement no recovery can be had on the common counts unless the special agreement has been fully performed, or in other words, unless there was a *precedent existing indebtedness* as the consideration for the promise on which the common counts are founded. 1 Chitty Pl. 340, notes 1 and 5 ; Id., 341, note 1 ; 2 Greenl. Ev. §§ 127, 128. There was no such indebtedness in this case unless the condition of the promise was fulfilled. The question then on all the counts is, has that condition been fulfilled? The sums subscribed by Ives and Dunham are both needed to make up the $60,000. Neither of these subscriptions is a subscription " hereto " in the true sense and meaning of the condition. Neither subscrip-

tion is *voluntary*. Dunham's was made in consideration of the plaintiffs' agreement to purchase his land at a given price. Ives's was made in consideration of the plaintiffs' agreement not to put a bell on the church. Besides, the condition that " no bell shall ever be put on the church " is annexed to Ives's subscription to the very writing declared on. Ives does not subscribe the writing subscribed by the defendant, but an essentially different one, containing new terms and conditions. *New York Exchange Co.* v. *De Wolf*, 31 N. York, 273. There can be no claim of waiver by the plaintiff, for it does not appear that he had any knowledge of the agreements with Ives and Dunham; certainly not of the condition annexed to Ives's subscription.

CARPENTER, J. The questions reserved by the Superior Court for our advice will be considered in their order.

1. " What is the legal effect of the conditions annexed to the subscriptions of Messrs. Ives and Dunham, and has the condition in the contract upon which it was to become operative been complied with, so as to render the defendant liable to pay his subscription ?"

The substance of this question is, as we understand it, shall the subscriptions of Messrs. Dunham and Ives be considered as subscriptions to the paper signed by the defendant, and the sums subscribed by them estimated as a part of the sixty thousand dollars required ? We think this question should be answered in the affirmative.

It appears that on the very day on which this subscription paper bears date, there was a meeting of the society, of which the defendant was a member, and at that meeting it was voted to appoint a committee to purchase the lot of Mr. Dunham on the terms proposed by him, namely, " for twenty-seven thousand dollars, towards payment of which, and the cost of erecting a church edifice and lecture room thereon, said Dunham agrees to subscribe the sum of ten thousand dollars ; the purchase of said lot being further conditioned, that within thirty days from this date a sum not less than sixty thousand dollars, including the amount subscribed by Mr.

Dunham as above stated, shall be raised by voluntary subscription for the aforesaid purpose of purchasing said lot and building thereon."

The subscription paper was drawn up in consequence of this vote, and for the purpose of carrying it into effect. The vote in terms makes the subscription of Mr. Dunham a part of the sum required. Whether the defendant was present at this meeting or not does not appear, nor is it material. He was a member of the society, and, under the circumstances, must be presumed to have had knowledge of its proceedings in this respect. He signed the paper then with the understanding that the sum of sixty thousand dollars required, should include the subscription of Mr. Dunham. Besides, it appears upon the face of the paper that it was for the purpose of purchasing this lot, and erecting a church edifice thereon. All the subscriptions therefore contemplated this purchase. Mr. Dunham's subscription, like most of the others, was unconditional. Neither that nor the others could be used for any other purpose. The society allowed him to pay his subscription by deducting it from the purchase money. In this we see nothing objectionable, as it does not appear that either the society or the defendant sustained any injury thereby. There is nothing then in this transaction of which the defendant can complain.

In respect to the subscription of Mr. Ives there is more difficulty. But we think, on the whole, that the condition attached to that ought not to prevail as a defense to this action. The condition is in these words: " conditioned that no bell shall ever be put on the church." It must be conceded that this condition varies the terms and substance of the instrument so far as his subscription was concerned.

Strictly speaking therefore the paper subscribed by him was not the same as that subscribed by the others. If there was nothing else in the case it would be difficult to answer this objection. But the society, by implication at least, agreed to the condition imposed. On the first day of July they purchased the lot. In September following they appointed a building committee, who went forward and erected

a lecture room and laid the foundations for the walls of the church. They would hardly have done this if they had not considered that the amount required by the terms of the paper had been subscribed. As his subscription was needed to make up that amount, by accepting it they necessarily agreed to the condition. But more than this, on the 14th day of March, 1866, the society, after reciting by way of preamble that Mr. Ives had subscribed three thousand dollars upon the express condition that no bell should be used on the church for the period of twenty years, voted to accept the subscription upon those terms. It further appears that the sum of three thousand dollars referred to in the vote includes the sum of one thousand dollars originally subscribed by Mr. Ives, and the sum of two thousand dollars subscribed by him to the last named writing. From this it would seem that the condition attached to the original subscription was subsequently modified somewhat, and, as modified, was expressly accepted and agreed to by the society. All this time the defendant was a member of the society, and it does not appear that he objected to their action at any stage of the proceedings; but on the contrary, when called upon to pay his subscription, promised to do so when convenient. Every other subscriber, including Mr. Ives, paid his subscription. The society, upon the credit of this fund, and relying upon its being paid in good faith by all the subscribers, and without objection from the defendant, proceeded to incur the expense of erecting this church. To excuse him from paying his subscription for the reason claimed would operate as a fraud, not only upon the society, but upon the other subscribers. We think therefore, under all the circumstances, that we ought to hold that the defendant has waived any objection to the validity of his subscription, growing out of the condition attached to the subscription of Mr. Ives.

2. The next question is, whether the evidence objected to by the defendant was legally admissible.

In the first place, it is claimed that the writing on which the suit is brought is inadmissible, for the reason that it fails

to show a consideration for the defendant's promise. The question of consideration will be discussed more fully under the next head. The question is not now how much the writing proves, but whether it is admissible as proving, or tending to prove, any part of the plaintiffs' case. The writing is the only legitimate and proper evidence to prove the defendant's promise. Whether the promise was operative, or otherwise, is quite another question, and quite unimportant in this connection. We think it was admissible, not only for the purpose just indicated, but also, in connection with the vote of the society, and the other circumstances of the case, for the purpose of proving the consideration alleged.

In the next place, the other papers, in the same words, but found in different books, were objected to on the ground that the subscriptions thereto were, in no proper sense, subscriptions to the original paper. Much that is said on the subject of Mr. Ives's subscription is applicable also to this part of the case. But we do not rest the decision of this point upon that ground, for, independently of those considerations, we think the evidence was admissible for the purpose of proving that sixty thousand dollars had been subscribed. The object and language of the three papers were precisely the same. The substance of the thing was, to raise a fund for the purpose of building a church. It was intended that all the subscribers to that fund should, in substance, enter into the same obligation, and with the same party. That was done. The circumstance that three papers were prepared, instead of one, is not of the slightest importance. The objection is purely technical, having neither substance nor merit.

The defendant also objected to the admission of the last paper, dated April 15, 1865. We think it was only admissible in connection with the vote of March 14th, 1866, and for the purpose of explaining it. For that purpose it was admissible.

3. The third question reserved is, what judgment ought to be rendered in the cause ? That presents the question of consideration. The defendant's promise being proved, and it being shown that the condition on which it was to become operative had been complied with, it only remains to inquire

whether there was a sufficient legal consideration for the promise, alleged and proved.

The first count in the declaration sets out three distinct and independent considerations. 1. Other subscriptions and promises evidenced by the writing. 2. Various good and valuable considerations of increased prosperity and usefulness of the society of which the defendant was a member. 3. In consideration of the promise and undertaking of the plaintiffs to purchase land and erect church buildings thereon. In regard to the first of these, it is objected that the declaration does not state what the other promises and subscriptions are. It appears from this count that the paper declared on was a subscription paper, and that it had for its object the erection of a house of worship. The objection therefore can only have reference to the fact that the names of the other subscribers are not disclosed. We cannot think that this is necessary. We can understand clearly from the declaration that the consideration, in this respect, is limited to the subscribers to this particular fund. A knowledge of the names of the other subscribers is in no sense required, in order to enable the court to understand the nature and effect of the consideration. This allegation is fully proved by the papers offered in evidence, and it would seem from the case of *Berkeley Divinity School* v. *Jarvis*, 32 Conn., 412, that it was sufficient ; but we have no occasion to decide that point and do not wish to be understood as expressing any opinion upon it.

The same objection is made in respect to the second consideration ; that the "various good and valuable considerations of increased prosperity and usefulness " of the society should be specified. That could not easily be done. It has reference to the then future usefulness and prosperity of the society generally. It was expected and designed that the enterprise in which they were then engaged would result in placing the society in a better condition to accomplish its mission and do good. The declaration states that the society was organized for the object and purpose of promoting and sustaining public worship. The allegation of increased prosperity and usefulness has reference to the object and purpose

for which the society was organized. We cannot see that the defendant would be benefited by a specification of the particular acts of usefulness, if that were possible, nor that he will be injured by an omission to state them. We think therefore that ,the declaration is sufficiently explicit in this respect. This allegation also is fully sustained by the evidence, and we think it is sufficient. This point was expressly decided in *Somers* v. *Miner*, 9 Conn. R., 458, and we see no reason to question the authority of that case.

The remaining consideration alleged, the undertaking of the society to purchase the lot and erect the buildings thereon, is clearly proved, not by the subscription paper alone, but by the contemporaneous vote of the society. They voted to purchase the lot and erect the buildings thereon, provided the sum of sixty thousand dollars should be subscribed for that purpose. Thereupon the subscription paper was prepared, and subscriptions made thereto, for the sole purpose of placing the society in a condition to carry the vote into effect. The relation of the two documents to each other, and the dependence of the one upon the other, are apparent. It is difficult to conceive of a clearer case of mutual promises, where the undertaking of one party is the consideration of the promise of the other.

But there is another view of this case which is equally conclusive against the defendant. This subscription was made for the purpose of promoting and sustaining a charitable object of the highest importance. The society, upon the strength of this and the other subscriptions, and relying upon their being paid in good faith, went forward, fairly and reasonably, and made advances and incurred expenses for the benefit of the charity. It is too late for the defendant to claim successfully that his subscription is not binding. *Berkeley Divinity School* v. *Jarvis*, 32 Conn. R., 412.

We are of the opinion that a sufficient consideration is alleged and proved, and that the plaintiffs are entitled to judgment. The Superior Court is advised accordingly.

In this opinion the other judges concurred.