Brooks Co. v. Tolman.

# WORK AND LABOR—ASSIGNMENT—EXEMPTIONS.

[Cuyahoga (8th) Circuit Court, January 27, 1905.]

Hale, Marvin and Winch, JJ.

## BROOKS CO. v. D. H. TOLMAN.

EXEMPTIONS CANNOT BE CLAIMED IN ASSIGNED WAGES, ETC.

An assignment of wages or salary to be earned in the future under an existing contract of employment, made for a valuable consideration, is valid and enforcible; and neither the assignor nor his family can claim such money, or any part thereof, as exemptions in lieu of a homestead, as against the rights of the assignee under the assignment.

ERROR to Cuyahoga common pleas court.

**Arnold Green,** for defendant, cited:

Benjamin, Sales (1 ed.) Sec. 311, p. 281; Sec. 352, p. 290; Sec. 358, p. 301; Sec. 359, p. 302; *Haynes* v. *Thompson,* 80 Me. 125 [13 Atl. Rep. 276].

**W. E. Patterson,** for defendant in error:

The allegations in defendant's first defense do not excuse it from paying over the money owing to the assignor to plaintiff. 2 Am. & Eng. Enc. Law (2 ed.) 1031; *Gamble* v. *Carlisle,* 6 Dec. 48 (3 N. P. 279).

The allegations in defendant's second defense do not constitute an excuse for their not paying plaintiff from the wages of assignor earned or to be earned under the existing employment. *Gamble* v. *Carlisle,* 6 Dec. 48 (3 N. P. 279).

It is no defense that the assignor was removable at will, nor that he was hired for no specified time. 2 Am. & Eng. Law (2 ed.) 1031; *Augur* v. *Belting & Packing Co.* 39 Conn. 536; *Harrop* v. *Landers,* 45 Conn. 561.

Validity of such assignments of wages. *Kane* v. *Clough,* 36 Mich. 436 [24 Am. Rep. 599]; *Ruple* v. *Bindley,* 91 Pa. St. 296; *East Lewisburg Lumber, etc., Co.* v. *Marsh,* 91 Pa. St. 96; *Metcalf* v. *Kincaid,* 87 Iowa 443 [54 N. W. Rep. 867; 43 Am. St. Rep. 391]; *Haynes* v. *Thompson,* 80 Me. 125 [13 Atl. Rep. 276]; *Garland* v. *Harrington,* 51 N. H. 409; *State* v. *Hastings,* 15 Wis. 75; *Brill* v. *Tuttle,* 81 N. Y. 454 [37 Am. Rep. 515].

## MARVIN, J.

This case is here by proceeding in error.

Tolman brought suit against the Brooks Company, alleging that:

"On or about January 3, 1901, D. C. Finneran, for a valuable con-

sideration entered into a written contract with the plaintiff, D. H. Tol-man, wherein the said D. C. Finneran agreed to sell, assign and trans-fer, and did thereby sell, assign and transfer to this plaintiff all his salary due or to become due to said D. C. Finneran from the Brooks Company for the period of ten years from the date of said instrument, and which salary amounted to $16 per week, and became due and pay-able on the following dates:'' (Then follows dates every week up to January 5, 1902.)

"Said written agreement provided that said D. C. Finneran should collect said money due him from said The Brooks Company when it should become due on the days and dates above specified on condition that he should turn over to said D. H. Tolman the amount of money designated after each and every date on or before the expiration of one day after said date; said written agreement further provided that on the failure of said D. C. Finneran to turn over to said D. H. Tolman said money as provided, the said right of D. C. Finneran to collect said money should became null and void, and D. H. Tolman should collect, and should have the sole right to collect all the money due or to become due to said D. C. Finneran from said The Brooks Company on the days and dates above specified, and further provided that said D. H. Tolman should apply said money received to the liquidation of an indebted-ness due to D. H. Tolman from said D. C. Finneran to the amount of $24, and that the balance of said money so collected from said The Brooks Company, over and above $24, should be by D. H. Tolman re-turned to D. C. Finneran. * * *

"This plaintiff says that said D. C. Finneran by five payments of $2 each made between January 12, 1901, and March 12, 1901, did re-duce his said indebtedness to said D. H. Tolman to the amount of $14, all of which was on said March 12, 1901, due and payable.

"Plaintiff says that said D. C. Finneran did fail to turn over to said D. H. Tolman, the money due or to become due said D. C. Finneran from the Brooks Company on January 5, 1901, January 12, 1901, Jan-uary 19, 1901, January 26, 1901, February 2, 1901, February 9, 1901, February 16, 1901, February 23, 1901, March 2, 1901, March 9, 1901, and March 16, 1901, on or before the expiration of one day after said dates, or any time thereafter, and that upon said failure, the right of said D. C. Finneran to collect said money from said The Brooks Com-pany became null and void, and said D. H. Tolman became the right-ful and proper party to collect said money under said written agree-ment.

"This plaintiff says that on March 22, 1901, he did notify the

Brooks Co. v. Tolman.

said The Brooks Company of the existence of said agreement and did file on said March 22, 1901, a copy of said agreement with the said The Brooks Company, and demanded from the said The Brooks Company the money due D. C. Finneran at that time, or to become due on March 23, 1901, and on each seventh day thereafter; said demand of payment was again made on the said March 23, 1901, from the said The Brooks Company, and at various dates since said March 23, 1901. The said The Brooks Company did refuse at all times to pay to said D. H. Tolman, the money due, or to become due, the said D. C. Finneran, from said The Brooks Company, or any part thereof, and does still so refuse to pay. The amount due to said D. C. Finneran from said The Brooks Company, on March 22 and 23, 1901, was the sum of $16, and a like sum of $16 has been due on each and every seventh day since March 23, 1901, from said The Brooks Company to the said D. C. Finneran.

"At the time said written agreement was entered into and the assignment of wages made, to wit: on or about January 3, 1901, the said D. C. Finneran was employed by the said The Brooks Company, and was under a contract of employment with said company. Said D. C. Finneran continued to be employed by said The Brooks Company, and under said contract of employment with said company, at all the times and dates mentioned in this petition, and is still so employed."

To this an answer was filed by the Brooks Company, admitting the making of the contract between Tolman and Finneran; that a copy of the contract was received by the defendant on March 22, 1901; that when it received said copy of contract Finneran was in its employ, but says that he was working by the day at $2.66, but that he was employed only by the day and for no definite time. It admits that Finneran failed to turn over to plaintiff his wages at the times specified in the petition, and says that it was owing to Finneran $15 as wages at the time the contract was filed with it, and denies all the other allegations of the petition.

Then follows a second defense, which reads:

"Said defendant for this its second defense to plaintiff's petition, makes a part hereof all of the facts and allegations set forth in his first defense as fully as if herein rewritten and in addition thereto says:

"1. That said D. C. Finneran at the time said copy of said agreement was received by it as aforesaid, was and is a resident and citizen of the state of Ohio and a married man and the head and support of a family, consisting of himself, wife and two minor children about three or four years old and not the owner of a homestead, and his wife was not the owner of a homestead, and their entire possessions consisted of

Cuyahoga County.

household goods not to exceed in value $200, all of which was of necessity used and in use by them in housekeeping and when it became known to them that said copy of said agreement had been mailed to defendant and received as aforesaid each and both of them claimed of defendant said wages as exempt and selected the same and demanded the same of defendant as exempt in lieu of a homestead and said D. C. Finneran directed defendant to disregard said agreement and repudiated the same and countermanded the order to pay said wages to plaintiff and directed payment thereof to his wife.

"2. That said wages aggregating some $15 owing by defendant to said D. C. Finneran were the personal earnings of said D. C. Finneran earned within the two weeks next preceding the mailing of said copy of said agreement to defendant and its receipt thereof as aforesaid and the same were necessary for the support of the family of said D. C. Finneran, and as soon as it became known by D. C. Finneran and his wife that a copy of said agreement had been received by defendant as aforesaid both he and his wife demanded said wages as his personal earnings necessary for the support of his family and exempt by law and said D. C. Finneran ordered and directed defendant to disregard said agreement, repudiated the same, countermanded the order to pay said wages to plaintiff, and directed payment thereof to his wife and this defendant did so."

A general demurrer to each of these defenses was filed by the plaintiff. This demurrer was sustained, and the defendant not desiring to plead further, judgment was rendered for the plaintiff, to reverse which the present proceeding is prosecuted.

The question thus presented for determination is, whether there was error in sustaining such demurrer.

On the part of the plaintiff in error it is urged that the contract between Finneran and Tolman was purely executory; that in such a contract title to the thing contracted about does not pass from one party to the other immediately upon the making of the contract, and that therefore such contract does not constitute a sale; that at most it is only a contract to sell, one of the essentials of a sale being a present transfer of the title to the thing sold.

See notes to 4 Benjamin, Sales (7 ed.) Sec. 1.

It is said there could be no present transfer of title to that which at the time of the contract had no existence; that whatever was to become due to Finneran from the Brooks Company was to be earned in the future, and hence could not have at the date of this contract any present existence. Counsel in argument liken it to a chair which one

Brooks Co. v. Tolman.

at his own place of business and from his own material agrees to make for another for an agreed price, and urge that as no chair is in existence when the contract is made, there can be no transfer of title at that time, and hence no sale of the chair. Doubtless, in the case of the chair, until there is a subsequent appropriation, of the chair made, to the contract there would be no sale. Benjamin, Sales Sec. 358.

The argument likening the contract involved in this case to the case of the chair supposed by counsel, however plausible, seems to be entirely overcome by the authorities. Cases involving the exact question presented here have been before the courts in many of the states.

In 2 Am. & Eng. Enc. Law (2 ed.) 1031, this language is used in the text:

"An assignment of wages or salary to be earned under an existing employment, made in good faith and for a valuable consideration, is valid."

Numerous authorities are cited in support of the text.

In *Kane* v. *Clough*, 36 Mich. 436 [24 Am. Rep. 599], the facts are, that on October 16, 1874, one Tucker was employed by the defendants in their organ manufactory, doing piecework but without any definite contract for the continuance of such employment. He was then indebted to his mother, and he executed to her an assignment of all the wages that thereafter might become due to him from his employers. Between that date and December 9 following, $65.50 had become due to him for his labor. This was less than he was owing to his mother. On page 439, it is said, in the opinion:

"It is this sum which is now in dispute; the plaintiffs claiming that the assignment could not reach it, because the moneys were not earned when the assignment was made, and there was no subsisting contract under which they were to be earned.

"It has often been decided that a mere possibility is not the subject of assignment. A contingent claim against a foreign country to damages to be recovered by treaty is an illustration. * * * A sale of fish thereafter to be caught passes no title when they are caught. * * * The same is held of a sale of sums to be earned by a physician in specified future years. * * * In Massachusetts an assignment of future services, there being no existing contract of service, has been held invalid; but cases are cited in the same state which hold that if the assignor is at the time under a contract of service, it is maintainable. * * * In New Hampshire it is decided that wages to become due may be effectually assigned, provided there is at the time an existing contract under which they are to be earned. * * * The distinction

between the cases in which the wages are not earned under a contract existing at the time of the assignment and those in which they are, is said to be that, 'In the former the future earnings are a mere possibility, coupled with no interest, while in the latter the possibility of future earnings is coupled with an interest, and the right to them, though contingent and liable to be defeated, is a vested right.' "

This case was where an effort was made to garnishee the wages of an employe. The court say further, page 440:

"But we are inclined to think that this case ought not to be distinguished from those in which the wages were earned under a continuous contract. The defendant was employed at the time the assignment was made. It is true he might never have received more work, but the expectation of continuous work existed on the part of employer and employed. The proposed transfer had reference to wages to be earned in an existing employment, and in this it differed from that in *Mulhall* v. *Quinn, supra* [67 Mass. 505], where the defendant only performed jobs occasionally."

It was held in this Michigan case that the transfer to the mother was a complete transfer of the title to the earnings.

In *State* v. *Hastings,* 15 Wis. 75, a judge of the circuit court had made an assignment of his salary to be earned after the time of the assignment and to become due on October 1, 1891. He undertook to repudiate it, said that it was an assignment of a thing not in existence, but it was held that the assignment was valid and that the assignee was the owner of the salary earned after the assignment was made.

The case of *Hawley* v. *Bristol,* 39 Conn. 26, differs from the case now being considered in that there was a definite fixed employment. The assignor had already earned $50 under a contract. He was to earn $625 in all. It was there held that the assignment of that to be thereafter earned was valid and carried the title.

In the case of *Metcalf* v. *Kincaid,* 87 Iowa 443 [54 N. W. Rep. 867; 43 Am. St. Rep. 391], the second clause of the syllabus reads:

"An assignment of wages yet to be earned is good as against the claims of attaching creditors, if accepted, and if, at the time it is made, there is an existing engagement or employment by virtue of which wages are being, and in the future may reasonably be expected to be, earned, even though there is no contract or fixed time of employment."

And in the opinion, on page 447, it is said:

"It has often been held that when one assigns wages to be earned under an engagement then existing, and when he was actually at work thereunder, at a fixed price, payable at a certain time, though no con-

Brooks Co. v. Tolman.

tract of employment existed for any stipulated time, yet such an assignment, if accepted, would be good as against a garnishment by creditors of the assignor."

To the same effect is the case of *Boylen v. Leonard*, 84 Mass. 407. The second clause of the syllabus reads:

"An assignment of wages, without limitation of time, will include wages earned by a laborer for nine months thereafter, under a contract then existing, by which he was to labor for his employer for an indefinite time, although his rate of wages was afterwards increased; especially if the parties have treated the assignment as applicable to such wages, and payments thereof have been made to the assignee since the rate was increased."

Other authorities are to the same effect, the holdings seeming to be that one assigning future earnings for which there is such relation between the assignor and his employer as that the employe may reasonably be expected to earn wages in the future, are valid.

We come to the conclusion, then, that this assignment is valid and transferred the ownership of the wages earned after the contract was made,—the wages that Finneran thereafter earned from the Brooks Company. That being true, no claim for exemptions could prevail as against it because the wages, not being the property of Finneran but the property of the assignee, neither Finneran nor his family could claim an exemption any more than in chattel property which is sold by the owner.

The judgment of the court of common pleas is. therefore, affirmed.

**Hale** and **Winch, JJ.,** concur.