## ESTELL *v.* THE KNIGHTSTOWN AND MIDDLETOWN TURNPIKE COMPANY.

TURNPIKE.—*Articles of Association.—Description of Route.*—Where the articles of association of a turnpike company describe the proposed road as beginning at a point where two roads, which are named, touch each other at a certain corner of a certain section, and the route is described so that its line can be traced to a certain point in a certain section and range, where it terminates, a failure to state the range of the section at the point of beginning will not render the description bad.

SAME.—*Calls for Stock.— Time of Payment.*—The power conferred upon the board of directors of a turnpike company to make calls for installments of stock subscribed was not intended to prevent stockholders, in their articles of association, or in any written promise to pay for stock, from fixing the time of payment, but was conferred to enable the company to call in and enforce payment, when no time is fixed in the contract itself. If the time of payment is fixed by the terms of the subscription, the party subscribing is bound thereby.

CORPORATION.—*Capaicty to sue.*—Capacities to sue is one of the capacities of every corporation.

APPEAL from the Henry Circuit Court.

OSBORN, J.—The appellee sued the appellant to recover the amount of his subscription to its capital stock. He demurred to the complaint, on the ground that the appellee had not legal capacity to sue, and that it did not contain facts sufficient to constitute a cause of action. His demurrer was overruled, and he excepted to the ruling. He then answered, first, by denying that he executed the articles of association sued on, which was verified by his own affidavit; second, a general denial.

The cause was tried by the court, finding for the appellee, motion for a new trial overruled, exceptions, and final judgment against the appellant on the finding.

The grounds for a new trial were, that the finding of the court was not sustained by sufficient evidence, and that it was contrary to law; second, for error occurring at the trial and excepted to by him, stating it.

The errors assigned are, that the court erred in overruling the appellant's demurrer to the appellee's complaint; second, that the court erred in overruling his motion for a new trial.

Estell *v.* The Knightstown and Middletown Turnpike Company.

The finding of the court was sustained by the evidence, and the motion for a new trial was properly overruled. The evidence was conflicting, and it was the duty of the court to determine, between the witnesses; and we think, after an examination of the evidence, that the finding of the court was in accordance with the preponderance of the evidence.

The bill of exceptions does not show that any ruling of the court was excepted to during the trial. That point is not urged here.

The appellant relies upon the first error assigned for a reversal.

The complaint alleges that the appellee is a legally organized corporation; that on the 1st day of April, 1867, he (the appellant) subscribed the articles of association of the company, and agreed thereon to pay the company, as provided for, and at the times, in the said articles of association specified, the amount of capital stock of the company subscribed by and set opposite to his name thereon, to wit, two hundred dollars. A copy of the articles was filed with, and made a part of, the complaint. It also alleges that afterward, on the 24th of the same April, a copy of the articles was duly filed and recorded in the recorder's office of Henry county, whereby the plaintiff became a legally organized corporation under and in pursuance of the articles of association; that at the time of such filing, more than five thousand dollars of valid stock had been subscribed to the articles, and that they have ever since been, and now are, such legally organized corporation; that the defendant paid on his subscription thirty-four dollars, and that the residue thereof is due and unpaid.

The following is a copy of the articles of association:

"ARTICLES OF ASSOCIATION.

"APRIL 1st, A. D., 1867.

"We, whose names are hereunto attached, having determined to construct a turnpike or gravel road from the points and through the lands hereinafter named, do therefore organize ourselves into a corporation as follows: The said corpo-

ration shall be known as The Knightstown and Middletown Turnpike Company. The said road shall commence where the road leading from Green's Corner to Knightstown strikes the Knightstown and Warrington turnpike, at or near the south-west corner of section number sixteen (16), township number sixteen (16), and running thence along the section line, or near what is known as the Knightstown and Middletown state road, through township number sixteen (16) and Greensboro township, to the line dividing Harrison and Greensboro townships, to a place known as Woodville, at or near the middle of section nineteen, in Greensboro township; thence west along the township line to the north-west corner of the aforesaid section number nineteen, known as the lands of Levi Ricks; running thence north along the township road on the east side of section thirteen, range eight east, township seventeen, to the terminus in township eighteen (18), in section number thirty-six, range eight east, or where the township road strikes the Pendleton and New Castle state road, making ten miles in length. The capital of said association shall be ten thousand dollars, and shall be divided into four hundred shares of twenty-five dollars ($25.00) each, and shall be paid in eight (8) equal payments quarterly, commencing June 1st, A. D., 1867."

The appellant's name appears as one of the subscribers to the articles for eight shares.

The first objection to the complaint is, that it does not describe the line of the route, and the place to and from which it was proposed to construct the road; that it does not state what range the section sixteen mentioned as the point of beginning is in. It states that it shall commence where the road leading from Green's Corner strikes the Knightstown and Warrington turnpike, at or near the south-west corner of section sixteen, in township sixteen. It then runs along the section line, or near a certain road, naming it, to a place known as Woodville, at or near the middle of section nineteen; thence west to the north-west corner of that section; thence running north on the town-

Estell *v.* The Knightstown and Middletown Turnpike Company.

ship road on the east side of section thirteen, range eight east, in township seventeen; thence to the terminus in section thirty-six, township eighteen, range eight east. The last two points named, being in range eight, enable us to fix the first one in range nine, with just as much certainty as if it had been specifically mentioned. We are thus enabled to say that the line of the route is northerly until it strikes about the middle of the east and west line on the north side of section nineteen, because it runs from that point west to the north-west corner of the section; and we also know that that section is in range nine and township seventeen, because the line is to run from thence north on the east side of section thirteen, range eight, in that township, and we know that the line running north on the east side of that section thirteen is the prolongation of the same line from the north-west corner of the section nineteen mentioned, and thus it is rendered certain that the section sixteen must be in range nine east, and that the route of the proposed road is in a northerly direction.

And besides, the road is to commence where one road strikes another, at or near the south-west corner of section sixteen; thence to run along the section line, or near a road named. The place where the two roads touched was the starting point, and the line was to be near the line of a road also named, and to places manifestly well known; that line and those places would control the description by section. and congressional township lines. The word "township" was used by mistake instead of "section," in describing the line as running west from the middle of section nineteen, to the north-west corner of that section. No one could be mistaken about, or misled by it. We think the line of the route was sufficiently certain to enable any one to locate or find it.

It is also objected that it does not appear that the line of the route of the proposed road was in Henry county. What we have already said shows that it was in that county. All of townships sixteen, seventeen, eighteen, and as far north.

as section twenty-five in nineteen, of range nine, and the eastern tier of sections in range eight, are in Henry county.

Another objection urged against the complaint is, that there is no averment of a performance of all the requirements of the statute and the organization of the company by the election of a board of directors, and we are referred to *The Covington, etc., Co.* v. *Moore,* 3 Ind. 510, to show that directors must be elected before stock can be collected. On examining that case, it will be seen that the court held that "a valid corporation and binding subscription of stock may exist without there being directors to the corporation" under the statute, and the judge who delivered the opinion of the court said, "and instalments of stock must be called for by the directors," and he added, "there must, therefore, be directors before subscriptions of stock can be collected." In *The New Albany and Salem Railroad Co.* v. *Pickens,* 5 Ind. 247, the complaint did not aver that the directors made any call for instalments. It simply stated that eleven instalments were due and payable. The charter of that company authorized the directors to "demand at such time and in such proportion as they shall see fit, the sums of money due by stockholders on their respective money subscriptions of stock," etc.

The subscription sued on in that case, as in this, fixed the time for the payments. The court, on page 249, in reference to the authority conferred upon the directors to make calls for instalments, says: "This provision confers upon the corporation power to demand money due by stockholders at such time, etc., as the company shall see fit; but in this case, the contract itself, in point of law, dispenses with the necessity of such demand."

The authority conferred upon the board of directors, by section 11 of the act under which the appellee was organized, was not intended to prevent the stockholders of the company, in their articles of organization or any written promise to pay for stock, from fixing the time of payment,

but to enable the company to call in and enforce payment where no time was fixed in the contract itself. If the promise of the stockholder fixes the time of payment, that dispenses with the necessity of exercising the power conferred upon the directors to make the call and fix the time. There is nothing in the statute prohibiting such a contract. Having made it, we know of no reason why he should not be bound by it.

This question was decided in *Vansickle* v. *Erdelmeyer*, 36 Ind. 262. In that case, the amounts subscribed were payable in payments at one, two, and three years, commencing with the year 1868, in money or labor, and at such time in said years as the directors might determine. An injunction was asked, to enjoin the collection of assessments by the treasurer of the county, on the ground that the articles of association of the company were illegal, because the amount was payable in labor. On page 263, it is said: " The amounts to be raised by assessments are payable in three or more yearly payments, and there would seem to be, at least, no impropriety in making the subscriptions payable in the same way."

The authorities cited by the appellant, to show that a subscription to pay upon condition is void, are not applicable. There was no condition annexed to the subscription. It was an absolute promise to pay; and the fact that the time of payment was fixed and made definite cannot be construed into a condition. Whether the company could, under section 16, require the payment at an earlier time, is not before us.

The complaint shows that in the articles of association a name was assumed; that the line of the route, etc., of the road, the amount of capital stock and the number of shares into which it was divided, the names, etc., of the subscribers, and the amount taken by each, were set forth. It also shows that the requisite amount of stock was subscribed, and that a copy of the articles of association was filed in the recorder's office of the proper county; and the law declares, "that

from that time the company shall be a corporation, known by the name assumed in the articles of association." It had legal capacity to sue. That is one of the capacities of every corporation.

The judgment of the said Henry Circuit Court is affirmed.

*J. T. Elliott*, *M. E. Forkner*, and *E. H. Bundy*, for appellant.

*T. B. Redding*, *J. Brown*, and *R. L. Polk*, for appellee.