Opinion delivered May 15, 1888.

---

No. 2187.

BELTON COMPRESS COMPANY *v.* SARG SAUNDERS.

1. STOCKHOLDERS CONTRACT.—Stock was subscribed to create a Cotton Compress company, under an agreement among the subscribers that a charter of incorporation should be obtained so soon as necessary steps could be taken, and a sufficient amount of stock subscribed to assure the success of the enterprise; it being agreed that the capital stock should not exceed thirty thousand dollars, which should be paid as might be required by rules to be adopted by the company. After thirty-four thousand dollars of stock had been subscribed, officers were elected at a meeting, all the subscribers participating, and agreeing that the capital stock should be fixed by charter at one hundred thousand dollars as the maximum, though it was agreed that so large an amount would not be needed. It was so fixed by charter. One who being present at such meeting was chosen a director, afterwards refused to pay the assessment on his stock required by the directors. There was no stipulation that the liability of a subscriber should depend on the fact that the full maximum of stock allowed by charter should be taken. In a suit brought to compel payment by such director on the assessment made, *held,*

(1) The liability on the assessment resulted from the mutual agreement between the parties who subscribed stock before the grant of the charter, and by the subsequent action of the defendant in relation thereto, and did not depend on the subscription of the full amount of capital stock allowed by the charter. The promise to pay assessments made on subscriptions was binding, though the corporation was to be formed after the mutual agreement to pay was entered into.

(2) The consideration which is necessary to sustain such a promise is raised by inference of law from the subscription itself and the privileges thereby conferred; and from the same circumstance the law will infer a duty to pay the stock, and an implied obligation of equal force with an express contract when nothing appears repugnant to such construction.

(3) The act of subscribing with others before the organization of the proposed corporation created a mutuality of contract which rendered the subscriber liable to the company after incorporation.

2. CASES DISTINGUISHED.—This case distinguished from Bridge Co. v. Chapin, 6 Cush., 53; Railroad Co. v. Gould, 2 Gray, 278, and other cases referred to in opinion. Also from Hotel Co. v. Bolton, 46 Texas, 633.

APPEAL from Bell. Tried below before the Hon. W. A. Blackburn.

*Harris & Saunders,* for appellant: Where one voluntarily subscribes in writing to pay a stipulated sum in money toward the furtherance of a joint enterprise, there need not be a mere pecuniary benefit passing to him to make a consideration valuable, anything injurious or detrimental to the other parties to the agreement arising from his failure to comply with his promise is equally operative to make the contract binding, when in addition to the promise, the party enters into an organization with all the other parties, accepts the position of director of its affairs, on the amount subscribed, agrees with the others that the work shall be commenced, that the officers shall erect the necessary buildings, purchase all the necessary machinery, levy and collect the necessary assessments therefor, which he also agrees to pay pro rata, and when on the faith of this, vast expenditures are made and the work completed, and most of the other subscribers pay their pro rata assessments, he is stopped by his acts and consent from avoiding the payment of his subscription simply because after this action of himself and the other subscribers a charter was obtained fixing the capital of the company at one hundred thousand dollars, which was never subscribed, because the amount already subscribed was found amply sufficient and more was unnecessary, except to make the company dishonestly "water its stock."

*Monteith & Furman,* for appellee, cited Galveston Hotel Company v. Bolton, 46 Texas, 633; Temple Water Works Company v. G. W. Walton, appeal from Bell, decided at Tyler term, A. D. 1885, of Court of Appeals.

When the subscribers for stock of the Belton Compress Company organized, elected directors and applied for a charter, which fixed the capital stock of said company at one hundred

thousand dollars, this charter was granted them by the State of Texas, upon the implied understanding that it would require said sum of money to carry into effect the purposes for which said corporation was to be formed, and a corporation has no power to change the amount of its capital stock, as prescribed in its charter, and all attempts to do so are void. Galveston Hotel Company v. Bolton, 46 Texas, 633; Oldtown and Lincoln Railroad Company v. Veazer, 39 Maine, 571; Salem Mill Dam Corporation v. Ropes, 6 Pick., 23; same case, 9 Pick., 187; Angell & Ames on Corporation, section 146.

It is an essential condition to making calls in those companies where the number of shares and the amount of capital is fixed, that the whole stock shall be subscribed before any calls can lawfully be made, except for preliminary purposes. Galveston Hotel Company v. Bolton, 46 Texas, 633; Stoneham Railroad Company v. Gould, 2 Gray, 278, Cabot and W. S. Bridge v. Chapin, 6 Cushing, 50; Atlantic Cotton Mills v. Abbott, 6 Cushing, 423; Salem Mill Dam Corporation v. Ropes, 6 Pick., 23; same case, 9 Pick., 187; Central Turnpike Company v. Valentine, 10 Pick., 142; New Hampshire Central Railroad v. Johnson, 30 New Hampshire, 390; Kalama Land Company v. Jarnagan, 126 Massachusetts, 157; Marlborough Branch Railroad v. Arnold, 75 Massachusetts, 159; Allmen v. Hudson River and Erie Railroad Company (Illinois Supreme Court), volume 7, Central Law Journal, November 17, 1884; Temple v. Lemen (Illinois Supreme Court), volume 20, Central Law Journal, page 136; Levisey v. Omaha Hotel, 5 Nebraska, 5; Sanbourne v. Hale (Nebraska Supreme Court), 5 American and English Corporation Cases, 40, and cases cited; 1 Redfield on Railroads, 189.

ACKER, JUDGE. The only instruction given to the jury was, in effect, that if they found from the evidence that the entire amount of the capital stock stated in the charter had not been subscribed they would find for defendant. Appellant insists that the court erred in giving this instruction, and we think it did.

Appellee's liability arises, if at all, upon the articles of subscription executed and mutually entered into between himself and other subscribers prior to the charter, and his conduct in relation thereto, from which it clearly appears that all of the subscribers thereto understood and contemplated that the asso-

ciation of persons thus formed would be incorporated as a cotton compress company in the city of Belton, as soon as necessary preliminaries could be arranged and a sufficient amount subscribed to make the enterprise an assured success. It is also apparent, from the articles of association and subscription, that the subscribers understood and agreed that the capital stock of the company should not be less than thirty thousand dollars, and that the payments on the stock subscribed should be made as the necessities of the enterprise required, in accordance with regulations to be adopted by the company. After about thirty-four thousand dollars subscriptions had been secured to the articles, the subscribers held a meeting, all being present, including appellee, and elected officers, appellee being chosen one of the directors. This meeting decided to incorporate at once, and that the capital stock should be fixed at one hundred thousand dollars in the charter, and directed the officers to proceed with the construction of the machinery; it being then understood that one hundred thousand dollars was to be stated in the charter as the maximum of capital stock, though it was thought not half that sum would be necessary to construct the compress. The compress was erected and put into successful operation. We think that, upon principle as well as authority, appellee's liability upon his subscription can not be made to depend solely upon the question whether or not the total amount of the capital stock stated in the after acquired charter had been subscribed, it appearing that assessments made by the directors before this suit was brought amounted to one hundred cents on the dollar of the subscriptions. In the case of the Hamilton, etc., Plank Road Company v. Rice, 7 Barbour, 165, which was a suit upon articles of subscription executed prior to incorporation, it is said:

"The agreement under consideration not only bears on its face the evidence of a consideration founded on the pecuniary advantage of membership, but also upon mutual promises expressed as clearly as words can speak. The mutual promises of the several subscribers constitute the consideration, but the promise is to pay the subscriptions to a third party, viz., the corporation, and the promise is valid and binding, notwithstanding the corporation is to be formed thereafter."

It is stated in Angell & Ames on Corporations, that "The consideration which is necessary to sustain such a promise is raised by inference of law from the subscription itself and the

privileges thereby conferred; and, from the same circumstance the law will infer a duty to pay for the stock, and an implied obligation of equal force with an express contract, where nothing appears repugnant to such construction. As was said by Mr. Justice Sutherland delivering the judgment of the court in Spears v. Crawford, 14 Wendell, 20: 'The promise of the defendant and the other subscribers, although it is in form to take the shares subscribed by them respectively, is undoubtedly (when taken in connection with what precedes it, and with the act of incorporation which is there referred to, and in part recited), a promise not only to take the shares, but to pay for them, to take them upon the terms and conditions set forth in the subscription paper.' " (Sec. 519.)

It is farther stated by the same author: "A person subscribing before the organization of a proposed incorporated joint stock company, raises a mutuality in his contract which will render him liable to the company after incorporation." (Sec. 523; see also, 41 Ind., 178; 2 Hill, 154; 55 Ind., 198; 43 Conn., 86; 15 Ind., 80; 46 Barb., 235; 54 N. H., 295; 30 Conn., 565.)

Our attention has not been called to a case, nor have we found one, in which it is held that the liability of a subscriber to the capital stock of a company to be thereafter incorporated depends upon the solitary question, whether or not the entire amount of capital stock stated in the after acquired charter has been subscribed. There is no stipulation in the articles of subscription now being considered that the subscribers shall not be liable thereon unless the full amount of the capital stock to be fixed in the charter is subscribed.

The authorities cited by appellee in support of the view of the law held by the court below, as indicated in the instruction complained of, are cases arising on subscriptions to the capital stock of companies after incorporation. We do not doubt that in such cases it is generally held that the payment of assessments upon such subscriptions can not be enforced until the full amount of the capital stock stated in the charter is bona fide subscribed, except where the charter expressly authorizes the company to begin operations on subscriptions amounting to less than the capital stock. To this effect are the following cases: Bridge Company v. Chapin, 6 Cushing, 53; Railroad v. Gould, 2 Gray, 278; Mill Dam Company v. Ropes, 6 Pickering, 35. In such case the subscriptions are held to refer to the act

of incorporation or charter, and are presumed to have been made with reference thereto.

. While the distinction is not made in the case of Hotel Company v. Bolton, 46 Texas, 633, between subscriptions prior and subscriptions subsequent to incorporation, yet that decision must be construed and applied with reference to the facts of that case. There, the subscription was made after the act of incorporation, and we believe it will be found to be so in each of the cases cited by Chief Justice Roberts in support of the conclusion that no recovery can be had against a subscriber until the total amount of the capital stock stated in the charter has been subscribed.

The second assignment of error is as follows: "The court erred in refusing to give to the jury the charges asked by plaintiffs, as they were the law of the case." As has been often announced by this court, such assignment of error will not be considered.

For the error indicated, we are of opinion that the judgment of the district court should be reversed and the cause remanded.

*Reversed* and *remanded.*

**Opinion adopted November 29, 1887.**