JOHN S. STEELY v. TEXAS IMPROVEMENT COMPANY.

Decided April 28, 1909.

**1.—Contract—Subscription to Corporation Stock.**

An agreement or contract to take shares of stock in a proposed corporation, considered, and held enforceable against the subscribers and not subject to the objections that it was too indefinite in its terms, and was not based upon a sufficient consideration.

**2.—Brief—Assignment of Error.**

An assignment of error which complains of the rulings of the trial court, each of which relate to separate and distinct questions, is not entitled to consideration on appeal although the assignment is followed by appropriate propositions and statements explaining each of the questions. And so, when each of the questions or points in the assignment is not stated in a separate proposition, or when the propositions are not followed by a proper statement.

**3.—Pleading—Incorporation—Denial.**

In a suit by a corporation against a subscriber to the stock for the amount of his subscription, the plaintiff having alleged that it was duly incorporated at a date prior to filing the suit, the allegation will be taken as true and, in the absence of a denial under oath by the defendant, no evidence would be required in support of the allegation.

**4.—Corporation—Subscription to Stock—Withdrawal of Subscription.**

In a suit against a subscriber to shares of stock in a proposed corporation for the amount subscribed, and wherein the defendant claimed that he had withdrawn his subscription, evidence considered, and held sufficient to support a judgment against the subscriber.

Appeal from the District Court of El Paso County. Tried below before Hon. G. M. Goggin.

*S. N. Russell,* for appellant.—A stock subscription to be enforceable at law must be definite in its terms and based upon a sufficient

consideration. Russell v. Bristol, 49 Conn., 251; Land Company v. Jernegan, 126 Mass., 185; Turnpike Corp. v. Gould, 6 Mass., 40; Belfast Ry. Co. v. Moore, 60 Me., 561; Kennebeck Ry. Co. v. Kendall, 31 Me., 470.

Mere informal offer or promise to subscribe, pending organization, does not constitute the promisor a member of the corporation, and it is without consideration to support it. Fanning v. Hibernia Ins. Co., 41 Am. Rep., 517; 23 Am. & Eng. Ency. of Law, p. 788.

A subscriber to the stock of a corporation to be formed may withdraw his subscription before the organization thereof, and before such subscription has been accepted by the corporation, and before any money has been expended or liabilities incurred on account of such subscription, by notifying the person having charge of the matter, and who is upon organization of the company elected president thereof, of his withdrawal. Lewis v. Hillsboro Roller-Mill Co., 23 S. W., 338; Patty v. Hillsboro Roller-Mill Co., 23 S. W., 336; Hudson Real Estate Co. v. Tower, 32 Am. St. Rep., 434; Clark & Marshall on Private Corporations, sec. 437, p. 1360; Hudson Real Estate Co. v. Tower, 42 Am. St. Rep., 379; Bryant's Pond Steam Mill Co. v. Felt, 47 Am. St. Rep., 323; Holt v. Winfield Bank, 25 Fed. Rep., 812; Williams v. Rogan, 59 Texas, 438.

*Richard F. Burges* and *Nagle & Scott,* for appellee.—The contract sued on and set forth in plaintiff's original petition was a definite, valid and enforcible contract, and the court did not err in overruling defendant's special exception thereto. Belton Compress Co. v. Saunders, 70 Texas, 703.

A subscription to stock of a corporation is valid without being in writing. 10 Cyc., p. 391, subd. sec. c; Cook on Corporations, sec. 52; Cook on Stocks and Stockholders, sec. 52; Am. & Eng. Ency. of Law (2d ed.), p. 905; Colfax Hotel Co. v. Lyon, 29 N. W., 780; Somerset National Banking Co.'s Receiver v. Adams, 72 S. W., 1125; Manchester St. Ry. Co. v. Williams, 71 N. H., 312.

The company having been organized and expenses and liabilities having been incurred, defendant could not thereafter withdraw even though it should be held that he could have withdrawn prior thereto. Patty v. Hillsboro Rolling Mill Co., 23 S. W., 336; Lewis v. Hillsboro Rolling Mill Co., 23 S. W., 338; Carr v. Bartlett, 72 Me., 120.

Defendant having participated in the meeting of February 12, when the amount of the capital stock was agreed upon and the charter was adopted, and not having objected thereto, is estopped from claiming that it was not incorporated as agreed upon. Comanche Cotton Oil Co. v. Browne (Sup. Ct.), 92 S. W., 450; Belton Compress Co. v. Saunders, 70 Texas, 703; Dallas Cotton & Woolen Mills v. Clancey, 4 W. & W. Civ. Cases, sec. 194.

NEILL, ASSOCIATE JUSTICE.—This is a suit brought by the Texas Improvement Company, a corporation organized under the laws of this State, against John S. Steely, to recover $2,500 alleged to be due upon a subscription for stock in the concern made by him before the company was organized.

The defendant answered by general and special exceptions to plaintiff's petition, a general denial, and a special plea that he had withdrawn his subscription before the corporation was organized.

The case was tried by the court without a jury, and judgment was rendered in plaintiff's favor for the amount sued for; and from the judgment this appeal is prosecuted.

The trial judge filed his conclusions of fact and of law which, as the assignments of error are mainly directed to them, are here copied:

"*Conclusions of fact.*—I find that after some preliminary negotiations and discussions which had taken place between the defendant John S. Steely and others, in reference to a proposed agreement to build an opera house on Texas Street, on the 8th day of February, 1906, and the parties having reached a preliminary understanding, on the 9th day of February, 1906, the said John S. Steely, together with Austin & Marr, Felix Martinez and C. N. Bassett, executed the following instrument:

" 'The State of Texas, County of El Paso.

" 'Know all men by these presents: That we, the undersigned, citizens of the city of El Paso, county of El Paso, and State of Texas, for and in consideration of the sum of one dollar, and the further consideration of the enhancing of the value of our property and the improvement of all of the said property situated on Texas Street in said city of El Paso, do hereby agree and obligate ourselves to pay the sums set opposite our names and to take in exchange for said subscriptions stock to be issued (the value of the same to be determined hereafter) by a corporation to be duly organized for the purpose of purchasing a building site and erecting thereon a building to be used as an opera house and for other purposes, the said building site having already been selected by a part of the subscribers hereto at a meeting held by the owners of property on said Texas Street on the evening of February 8, 1906, the said site being more particularly described as follows, to wit: 70 feet off of block 41, Mills' map, commencing 40 feet west from the southeast corner of said block 41 and extending 70 feet along the north line of Texas Street and running back 130 feet in parallel lines, this being a part of the same property purchased by Austin & Marr and Felix Martinez and Dr. Weeks and brother.

" 'The said Austin & Marr and Felix Martinez agree to take twenty-eight thousand ($28,000) dollars for the said described 70 feet, fourteen thousand ($14,000) of which they hereby subscribe to the capital stock of said corporation to be organized, and fourteen thousand ($14,000) of which shall be paid in cash to said Austin & Marr and Felix Martinez for the other half of said mentioned 70 feet.

" 'The subscribers hereto agree to pay the sums so subscribed in three equal payments, payable in six, twelve and eighteen months from March 1, 1906, with interest at the rate of eight percent per annum, after maturity, and we further agree that we will execute said notes in due form upon the call of a properly authorized committee.

" 'Witness our hands this 9th day of February, A. D. 1906, Austin & Marr, one-half interest $7,000 in above stock subscription. Felix Martinez one-half interest in above stock subscription, $7,000; C. N. Bassett, $9,000; John S. Steely, $2,500, etc.,' and other signatures.

"I find that the said Steely did not personally own any property on Texas Street, but that his wife was the owner of property on Texas Street. The said Steely, when he affixed his signature to said instrument, set opposite his name and subscribed the sum of $2,500, Austin & Marr $7,000, Felix Martinez $7,000, and C. N. Bassett $9,000, each of said subscribers agreeing under said contract to pay their respective subscription in three equal payments in six, twelve and eighteen months from March 1st, 1906, with interest at the rate of eight percent per annum after maturity, and agreed to execute notes in due form upon the call of the proper authorized committee for said amount. That after the said Steely, the said Austin & Marr, the said C. N. Bassett, and the said Martinez had so subscribed to said agreement other persons interested in Texas Street property also subscribed to said agreement for the following number of shares: R. B. Stevens, 300 shares; J. H. Smith, 50 shares; M. C. Edwards, 150 shares; John P. Casey, 250 shares; Sorrenson & Morgan, 500 shares; G. L. Hitt, 166 shares; Silberberg Bros., 67 shares; B. L. Hammett, P. P. Hammett, 100 shares; John Krick, 75 shares; Caples Lumber Company, 100 shares; E. L. Pennabaker, 50 shares; A. Courchesne, 150 shares; bringing the total subscription up to 4,508 shares, or $45,080, on the 12th day of February, 1906, on which day a general meeting of the stockholders of said concern was held at the office of Austin & Marr for the purpose of organizing a company.

"That there were represented at said meeting, either in person or by proxy, shares to the amount of $45,080, and, as a matter of fact, at the time of the meeting, although not present or represented, subscriptions had been had or promised, though not in writing, exceeding in amount one-half of the proposed capital stock of $100,000. That the defendant John Steely was present in person at said meeting, together with C. N. Bassett, who presided at the meeting, James Marr, who acted as secretary, and Felix Martinez, Austin and others.

"That the said John Steely took part in said meeting as a stockholder, and was recognized as such by the meeting, but gave no notice of any dissatisfaction or intention to cancel or withdraw his subscription. That at said meeting, as shown by the minutes, the offer of Austin & Marr and Felix Martinez to sell certain property on Texas Street named in the subscription agreement, was accepted, and C. N. Bassett was appointed trustee for the stockholders for the purchase of the property, by resolution of said stockholders at said meeting. R. F. Burges was employed as attorney for the company to take his salary in stock, the capital stock of the company was fixed at $100,-000, divided in 10,000 shares of $10 each. Nine directors were elected to serve during the ensuing year, and the articles of incorporation were read, approved and adopted. That at said meeting, however, no officers of the corporation were elected or designated other than the nine directors above named, until the 23d day of February, 1906. On the 13th day of February, however, the articles of

incorporation having been subscribed in accordance with law, were forwarded to the Secretary of State at Austin for filing, and were thereafterwards on the — day of —— accepted and filed by the Secretary of State.

"That after said stockholders' meeting on the 12th, and the adoption of the articles of incorporation and forwarding same to the Secretary of State, probably on the 13th or 14th, C. N. Bassett, who had presided at the meeting of stockholders on the 12th, and who had been elected one of the directors at said meeting, called the defendant, John Steely, by telephone, and proposed he should become one of the directors of the concern.

"Whereupon Steely informed Bassett that he did not desire to have anything further to do with the organization and requested him to remove his name from the subscription list.

"This, however, Bassett did not do, nor did he inform any of the other stockholders or directors elected of the statement of the said Steely, and the said Steely's name remained subscribed and appeared on said list as a subscriber, and he was so treated as a stockholder by the corporation at the time of the election of president and other officers of the company on the 23d day of February, and at the time of filing of said charter with the Secretary of State, and up to the present; and that the said Steely at no time, or in any way other than as above stated, repudiated said subscription until sometime after said meeting of the 23d, when James Marr, secretary of the new corporation, asked of the said Steely what he intended to do in reference to the matter of his subscription, and the said Steely stated that he did not feel like doing anything, that he had not been treated right.

"That the said Marr, as secretary, had sought the said Steely immediately after the issuance of certificates of stock, as well as some time later, for the purpose of delivering to him a certificate for the 250 shares subscribed for by him, but not having found him said certificate has never been otherwise tendered the said Steely than that thereafter R. F. Burges, attorney for the corporation, by letter offered to deliver his certificate of stock, and informed Steely that if he did not pay his subscription he would institute suit in behalf of the company, and this suit was instituted.

"That said corporation, sometime after the conversation between Bassett and Steely over the telephone and after the filing of its articles with the Secretary of State, received a deed of conveyance from Austin & Marr and Martinez to the property on Texas Street contracted for, and thereafter the said corporation erected on said property an opera house costing approximately $90,000.

"I further find that on the trial of the case the plaintiff tendered the defendant, Steely, certificate for the 250 shares of stock alleged to have been subscribed for by him, which tender be refused.

"I find that the said plaintiff corporation was organized, property purchased and the opera house built substantially along the lines set out in said agreement subscription."

*"Conclusions of law.*—I find that if the instrument signed by the said Steely with Martinez, Austin & Marr, Bassett, and afterwards by

others, by which they agreed and obligated themselves 'to pay the sums opposite their names and to take in exchange for their subscriptions stock to be issued (the value of the same to be determined thereafter) by a corporation to be duly organized for the purpose of purchasing a building site and erecting thereon a building to be used as an opera house and other purposes, said building site having already been selected by a part of the subscribers hereto at a meeting held by the owners of the property on said Texas Street, on the evening of February 8, 1906, the said site being more particularly described as follows, etc.,' was revocable by a subscriber as to himself before the organization of the corporation at any time he might see fit to withdraw from said agreement, notwithstanding no breach or failure to carry out the purposes of the agreement be shown, yet after the subscribers meet together for the purposes of organizing the corporation on lines consistent with the agreement of subscription, adopt a charter, select a board of directors, employ an attorney to represent them, and accept an option to purchase the very property which their subscription agreement mentions as one of the objects of the organization, it is then too late for a subscriber to withdraw his name and cancel his subscription.

"That this is especially true when such subscriber is present at the meeting so held and takes part in such meeting as a subscriber and makes no protest and gives no intimation of dissatisfaction on his part, or intention not to acquiesce in the action of the meeting or to withdraw his subscription. That the action of the stockholders assembled for the purpose of perfecting an organization based upon the written agreement to subscribe the amounts set opposite the names of the respective subscribers and other promises of subscribers which may have been made, the employment of an attorney and acceptance of an option to purchase property, constitutes such an acceptance of the offer to subscribe, if such offer is not based upon a good and sufficient consideration in the first place, as will bind the subscriber, and it is then too late for him to repudiate his subscription, his associates and himself having acted on his agreement, adopted their charter, elected their directors, employed an attorney, and accepted an option to purchase real estate for the carrying out of the object for which the corporation is to be organized.

"If it is conceded that the subscription agreement signed by the said Steely and others was not in the first place based upon a sufficient consideration to make it binding upon the subscribers, and that the considerations expressly stated in the instrument or those which might well be implied growing out of the mutual promises of the subscribers, are not sufficient to prevent a subscriber from legally withdrawing at any time before the organization, yet when he does not withdraw, but takes part in a meeting of the stockholders at which the corporation is organized, or attempted to be organized, and where obligations are incurred, business transacted by him and others, a charter adopted and directors elected for the ensuing year, and such charter forwarded to the Secretary of State to be filed on the supposition that the subscriptions are binding, then a subscriber would be estopped from claiming the right to cancel or withdraw his subscription. He would

not be permitted, after having led the other subscribers acting with him, by his subscription and co-operation, to organize the company, incur obligations for it and forward its charter, to withdraw simply because he had concluded at that late date that he did not desire to go on with the enterprise. That it is not the actual filing of the articles of incorporation with the Secretary of State which fixes the obligation of the subscriber but it is the organization of the company by himself and his associates, the adoption of the charter and selection of directors. When directors have been selected for the new organization, the charter drawn, adopted and forwarded to the Secretary of State, it is too late for him to withdraw, notwithstanding the charter may not have been received or filed by the Secretary. I, therefore, find that the notice given by Steely to Bassett that he did not desire to have anything further to do with the matter, came too late, that he could not then cancel his subscription. That his subscription had been acted upon in the organization and become binding, and he is now liable for the payment of same, it appearing that the objects of the corporation as foreshadowed in said subscription agreement signed by him, have been substantially carried out.

"And I find that the plaintiff is entitled to recover from defendant the amount of his said subscription with interest, and he to have such certificate of stock delivered to him."

*Conclusions.*—1. The first assignment complains of the court's overruling defendant's special exception to plaintiff's petition, which is:

"And defendant specially excepts to that portion of the plaintiff's petition which sets out the subscription contract alleged to have been signed by defendant, for the reason that the agreement pleaded by the plaintiff is too indefinite to be inforced as a contract; because the consideration stated is insufficient, and because the name of the proposed corporation is not stated, nor is the amount of capital stock for which same was to be incorporated, nor the number of shares into which such stock was to be divided and the value of such shares, nor is the name of the party to which the alleged subscription is payable set out in said agreement." The only proposition asserted under the assignment is: "A stock subscription to be enforceable must be definite in its terms and based upon a sufficient consideration."

The subscription referred to in the exception, as copied in the trial court's findings of fact, is as set out in plaintiff's petition and is followed by appropriate allegations which, if true, show *prima facie* the liability of the defendant thereon. There is no such incompleteness or uncertainty in the terms of the agreement embodied in the subscription as would render it void *ab initio*. It is apparent from the very nature of such an agreement that other things are necessary to be done and steps taken to render effective its purpose. The objection does not go to the validity of subsequent acts claimed to have been performed in pursuance of the agreement, but to the agreement itself. That the subscription was supported by a sufficient consideration is evident when read in the light of Compress Co. v. Saunders, 70 Texas, 703, in which it is held that "A person subscribing before

the organization of a proposed incorporated joint stock company, raises a mutuality in his contract which will render him liable to the company after its incorporation." Whether the principle quoted is, to its full extent, applicable in this State we have not the temerity to decide. But, as will be shown in considering other assignments, it is not so limited, either here or in other jurisdictions, as to render such a subscription void for lack of consideration.

2. The second assignment of error is as follows: "The court erred in its conclusions of fact, in the ninth paragraph thereof, in finding as a matter of fact that at the general meeting of subscribers held in El Paso, Texas, on the 12th day of February, 1906, at which directors were elected, the defendant was present and took part in said meeting as a stockholder and was recognized as such by said meeting, and that, although not present and represented, subscriptions had been had or promised, though not in writing, exceeding in amount one-half of the proposed capital stock of $100,000, for the reason that such finding of fact is not sustained by the testimony. And because the court previously found as a matter of fact in said ninth paragraph of its conclusions of fact that there had been only 4,508 shares of stock, or $45,080, actually subscribed on said date."

It will be observed that this assignment complains of two separate and distinct findings of fact, (1), that defendant was present and took part in the meeting as a stockholder and was recognized as such; (2), that at the time, subscriptions had been made exceeding in amount one-half of the proposed capital stock.

It is held that where an assignment of error complains of two rulings of the trial court, each of which relate to separate and distinct questions although followed by appropriate propositions and statements explaining each of the questions, it is insufficient to require consideration. Cammack v. Rogers, 96 Texas, 457; Texas Mexican Ry. v. Lewis, 99 S. W., 577; Kaack v. Stanton, 112 S. W., 706. It seems to us that the assignment is obnoxious to the principle enunciated in the cases cited. If, however, the findings complained of should not be deemed as rulings of the court on separate and distinct questions, then it does not occur to us that each point under the assignment is stated in appellant's brief as a proposition, as is required by rule 30 of this court. (C. T. & N. W. Ry. v. Gibson, 99 Texas, 98.) Nor do we think that the statements subjoined to the propositions are such as are required by rule 31. But as to this, we have read the entire statement of facts, and if the assignment is such as should be considered will say that we believe the evidence reasonably tends to support the findings of the trial judge upon both issues referred to in the assignment.

3. The third assignment of error complains that the court erred in finding as a matter of fact that on February 13, 1906, plaintiff's articles of incorporation, having been subscribed in accordance with law, were forwarded to the Secretary of State for filing and were afterwards accepted and filed by such officer, upon the ground that such finding is not sustained by the evidence.

The proposition advanced under the assignment is the same as first asserted under the second, which is: "The burden of proof being

upon the plaintiff to establish its case, any conclusion of fact found by the court against the defendant without any testimony to sustain such conclusion, or from which such conclusion can be drawn, is unwarranted in law. There must be some evidence of a fact to warrant the court in finding that such fact is established. A verdict unsustained by the testimony can not stand." The plaintiff having alleged that it was a corporation duly incorporated, and the allegation not having been denied as required by subdivision 7 of art. 1264, Rev. Stats. of 1895, no evidence was required in support of the allegation, for it must be taken as true. The burden being upon the defendant to prove his special defense, it was incumbent upon him to show that the corporation was not organized at the time he claims that he withdrew his stock subscription. Having failed to make such proof, the proposition can not be sustained.

4. The fourth assignment of error is as follows: "The court erred in its conclusions of fact, in its tenth paragraph thereof, in finding as a matter of fact that after the general meeting of stockholders (subscribers) on the 12th of February, 1906, and the adoption of the articles of incorporation and forwarding the same to the Secretary of State, probably on the 13th or 14th, C. N. Bassett, who had presided at said meeting of stockholders (subscribers) on the 12th, and who had been elected one of the directors at said meeting, called the defendant, John Steely, by telephone and proposed he should become one of the directors of the concern. Whereupon Steely informed Bassett that he did not desire to have anything further to do with the organization, and requested him to remove his (Steely's) name from the subscription list, for the reason that said finding of fact is not sustained by the evidence, which shows that said conversation between Bassett and defendant occurred on the 10th day of February, 1906, prior to said meeting of the 12th and before the plaintiff attempted to organize as a corporation."

The burden being upon the defendant to prove that he withdrew his subscription prior to the meeting of February 12, 1906, at which the corporation was organized, if it should be conceded that he directed Bassett to take his name from the subscription list and it was notice to the parties to the subscription agreement—which is doubtful, it not appearing that Bassett was the chief party to the enterprise (Cook on Corp., section 169)—of a revocation of his subscription, still the burden was on him to show that such notice was given anterior to the 12th of February, else the revocation would not be proved. The date of the telephonic conversation between Bassett and defendant, in-which the latter claims he told the former to take his name from the subscription contract—which is denied by Bassett—is not definitely fixed by the evidence. Though it may seem that the preponderance of evidence tends to support defendant's contention that it was prior to the 12th of February, it can not be said that the state of the evidence is such as to show such anterior date as a matter of law. The court was not bound to believe the defendant's testimony on this issue (McCormick v. Kampmann, 102 Texas, 215); and, besides, there were circumstances in evidence tending to show that the conversation occurred after that time.

5. The fifth assignment of error is directed against the court's conclusions of law. It is held in some jurisdictions that, where a number of persons sign a subscription paper agreeing to take stock in a corporation to be thereafter formed by them, there is a contract between the subscribers themselves to become stockholders, without further act on their part, immediately upon the formation of the corporation, binding and irrevocable from the date of the subscription, unless canceled by consent of all the subscribers before acceptance by the corporation; and a continuing offer to the proposed corporation, which, upon acceptance by it after its formation, becomes, as to each subscriber, a contract between him and the corporation. See 10 Cyc., 388, and note 13 for cases cited, among which is Belton Compress Co. v. Saunders, 70 Texas, 699, in support of this principle; Cook on Corp., sections 71, 72; 1 Thomp., Corp., section 1205. It may be stated as a corollary to this principle, that a subscriber to such subscription paper can not withdraw or obtain a cancellation of his subscription except by the unanimous consent of the other subscribers. (Cook on Corp., section 169; Minneapolis T. M. Co. v. Davis, 40 Minn., 110, 3 L. R. A., 796, 12 Am. St. Rep., 701; Hughes v. Antietam Mfg. Co., 34 Md., 316; Johnson v. Wabash, etc., R. R. Co., 16 Ind, 389; Ashuelot Boot & S. Co. v. Hoit, 56 N. H., 548.)

There is another line of decisions which hold that when persons sign an agreement to form a corporation and to take stock therein, intending a contract with the corporation, the subscription of each of the parties is a continuing offer to the proposed corporation and becomes a binding contract as soon as the corporation is formed, and expressly or impliedly accepts the same; but that such a subscription does not constitute a binding contract until the corporation is formed, because until then there are not the two parties necessary to the contract; and that, therefore, a subscriber may revoke his subscription, and thus prevent a contract with the corporation, at any time before it is formed. See Clark & Marsh. on Corp., sections 439c and 439d, 451a and authorities cited in note.

We shall not undertake to decide between these conflicting principles, and we deem it unnecessary. For if the first is correct, defendant could not withdraw his subscription without the unanimous consent of the other subscribers, which was not obtained; or if the other should be deemed the law, then, according to the findings of fact, the defendant did not withdraw his subscription before the organization of plaintiff corporation and its acceptance thereof. Therefore, the defendant's liability is established whichsoever principle should be deemed the law.

What we have said in considering this and the other assignments of error, disposes of the remaining assignments adversely to appellant, and renders further discussion of the points they present unnecessary. There is no error in the judgment and it is affirmed.

<em>Affirmed.</em>

Writ of error refused.