**COLEMAN HOTEL CO. v. CRAWFORD.\***
(No. 903—4806.)

Commission of Appeals of Texas, Section B.
March 21, 1928.

**1. Corporations ⊜►81—Subscription agreement by persons agreeing to buy stock in corporation to be formed when certain amount was subscribed held binding and irrevocable from date of subscription.**

Subscription agreement under which number of persons agreed to buy capital stock of hotel corporation to be thereafter formed when certain amount was subscribed *held* to constitute contract by the subscribers themselves to become stockholders when corporation was formed on condition expressed, and as such was binding and irrevocable from date of subscription.

**2. Corporations ⊜►76—Mutual promise of subscribers to subscription agreement for stock in corporation to be formed held sufficient consideration.**

Where number of persons agreed to subscribe for capital stock of hotel corporation to be formed when certain amount was subscribed, promise of each *held* to be good consideration for promise of the others, and sufficient as consideration to constitute contract valid and enforceable.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Coleman Hotel Company against J. M. Crawford. Judgment for defendant was affirmed (290 S. W. 810), and plaintiff brings error. Reversed and remanded.

Critz & Woodward, of Coleman, for plaintiff in error.

Dibrell & Snodgrass and W. Marcus Weatherred, all of Coleman, for defendant in error.

LEDDY, J. A number of citizens of the city of Coleman were desirous of organizing a corporation, with a minimum capital stock of $50,000, for the purpose of building and operating a modern hotel in said city. In order to consummate such purpose the following subscription agreement was prepared and signed by the interested parties, viz.:

"September 7, 1925.

"We hereby subscribe the amount set opposite our names for the purpose of organizing a corporation to purchase site, construct and own a modern fire proof hotel of not less than fifty rooms in Coleman. This subscription to be valid only upon condition of not less than $50,000.00 total solvent subscriptions being obtained. When $50,000.00 or more has been subscribed a meeting, at which all subscribers are invited, shall be held for the purpose of selecting site and making all proper arrangement for construction of such hotel, collecting subscriptions, etc. It is understood that 20 per cent. shall be payable when called for and the balance as needed, not exceeding 10 per cent. monthly until fully paid."

Among those signing such subscription was the defendant in error, opposite whose name was the amount of $5,000. After obtaining subscriptions in excess of the amount required, a meeting was held at which all subscribers were present. At this time the site for the proposed hotel was selected, which was a lot just across the street from the business store owned and operated by the defendant in error. It appears that defendant in error assented to the selection of this location. At the same meeting arrangement was made for the appointment of a committee to act as trustees to handle the matter of incorporating the hotel company, this committee consisting of the defendant in error and six others.

At one of the several meetings of the subscribers, and before the filing of articles of incorporation, it was decided to rent the hotel, when constructed, for a stipulated rental. It seems that defendant in error strongly objected to this, his complaint being that the rental under such arrangement would be insufficient and that the hotel so operated would be a financial failure. Shortly thereafter he attempted to withdraw his subscription by giving written notice, and upon demand refused to pay the same in accordance with the terms of the agreement.

Later, those interested duly filed articles of incorporation as contemplated by the subscription agreement. The application for the charter showed an authorized capital stock of $80,000 fully subscribed, and $41,770 duly paid in in cash. The affidavit accompanying the articles of incorporation listed defendant in error's subscription of $5,000 as being part of the authorized capital stock of said corporation. After the charter was filed, the corporation thus formed brought this suit against defendant in error to recover the amount of his stock subscription.

At the close of the testimony offered by plaintiff in error, the trial court peremptorily instructed the jury to render a verdict in favor of defendant in error. Upon appeal the Court of Civil Appeals (290 S. W. 810) concluded that the subscription agreement did not constitute a valid contract, and affirmed the judgment of the trial court.

[1] The undisputed evidence shows that defendant in error gave notice of the withdrawal of his subscription before the formation of the corporation, and at a time when no expenses had been incurred on account of the enterprise. The record does not disclose any cause justifying defendant in error's withdrawal of his subscription unless the agreement by which it was made does not constitute a valid and binding contract. The question, therefore, is squarely presented whether such subscription agreement constitutes a valid contract from which a subscriber could not withdraw without the unanimous consent of the other subscribers.

---

⊜►For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied April 25, 1928.

It may be stated at the outset that there is considerable conflict in the authorities on this question. The courts which refused to enforce such subscription agreements, as a rule, base their holdings either upon the proposition that such agreements are without sufficient consideration to constitute a binding and enforceable contract, or upon the supposed want of sufficiency of parties to the agreement.

We are not impressed with the soundness of either of these reasons for declining to sustain such agreements as valid and enforceable ones. We think the better view is expressed by the authorities holding that a subscription agreement by a number of persons to the capital stock of a corporation to be thereafter formed by them constitutes a contract between the subscribers themselves to become stockholders when the corporation is formed on the condition expressed in the agreement, and, as such, is binding and irrevocable from the date of subscription. Bohn v. Burton-Lingo Co. (Tex. Civ. App.) 175 S. W. 173; Belton Compress Co. v. Sarg Saunders, 70 Tex. 699, 6 S. W. 134; McCord v. Southwestern Sundries Co. (Tex. Civ. App.) 158 S. W. 226; Steely v. Texas Improvement Co., 55 Tex. Civ. App. 463, 119 S. W. 319, 324; 1 Cook on Corporations, §§ 71 and 72, 169; 1 Thompson on Corporations, §§ 760, 761, 763, 766, 514; Minneapolis Threshing Machine Co. v. Davis, 40 Minn. 110, 41 N. W. 1026, 3 L. R. A. 796, 12 Am. St. Rep. 701; Businessmen's Association v. Williams, 137 Mo. App. 575, 119 S. W. 439; Nebraska Chicory Co. v. Lednicky, 79 Neb. 587, 113 N. W. 245; Clapp v. Gilt Edged Mines Co., 33 S. D. 123, 144 N. W. 721; Utah Hotel Ass'n v. Madsen, 43 Utah, 285, 134 P. 577; First Nat. Bank v. Hizer, 189 Wis. 359, 207 N. W. 688; New Lindell Hotel Co. v. Smith, 13 Mo. App. 7; George v. Harris, 4 N. H. 533, 17 Am. Dec. 446; Christian College v. Hendley, 49 Cal. 347; Berkeley Divinity School v. Jarvis, 32 Conn. 412; Higert v. Indiana University, 53 Ind. 326; Edinboro Academy v. Robinson, 37 Pa. 210, 78 Am. Dec. 421; 14 Cyc. 512, § 766.

[2] When several parties agree to contribute to a common object which they wish to accomplish, the promise of each is a good consideration for the promise of others. The Supreme Court of this state has frequently upheld contracts sustained only by the mutual promises of the parties thereto. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Flanders v. Wood, 83 Tex. 277, 18 S. W. 572; Texas Seed, etc., Co. v. Chicago Set & Seed Co. (Tex. Civ. App.) 187 S. W. 747; J. B. Farthing Lumber Co. v. Ry. Co. (Tex. Civ. App.) 178 S. W. 725; Lester v. Hutson (Tex. Civ. App.) 167 S. W. 321; Abney v. Roberts (Tex. Civ. App.) 166 S. W. 408; Old River Rice Co. v. Stubbs (Tex. Civ. App.) 137 S. W. 154; Gulf, etc., Ry. Co. v. Combes (Tex. Civ. App.) 80 S. W. 1045; Pullman Palace Car Co. v. Booth (Tex. Civ. App.) 28 S. W. 719;

Beaumont Traction Co. v. Texarkana, etc., R. R. Co. (Tex. Civ. App.) 124 S. W. 987.

The mutual promise of the subscribers to the agreement in question, whereby each subscriber would, if the promises made therein should be carried out, obtain the advantage of pecuniary benefits resulting from the operation of the enterprise contemplated by the proposed corporation, is amply sufficient as a consideration to constitute a valid and enforceable contract.

The operation of a business through the instrumentality of a corporation is a valuable privilege. It cannot be exercised in this state until all of the authorized capital has been fully subscribed. The promise, therefore, of each subscriber to the capital stock of a proposed corporation is necessarily of value to every other subscriber, as it is only by the joint agreement of a sufficient number of subscribers that the privilege of operating through a corporation can be obtained. Our view of the unsoundness of the reasons sustaining the decisions denying the validity of such contracts is well expressed in the case of Hamilton, etc., Plank Road Co. v. Rice, 7 Barb. (N. Y.) 165, in which the following language is used:

"The agreement under consideration not only bears on its face the evidence of a consideration founded on the pecuniary advantage of membership, but also upon mutual promises expressed as clearly as words can speak. * * * The mutual promises of the several subscribers constitute the consideration, but the promise is to pay the subscriptions to a third party, viz., the corporation, * * * and * * * the promise is valid and binding, notwithstanding the * * * corporation" is "to be formed thereafter."

Our Supreme Court was evidently impressed with this view of the question, as it quoted with approval the above language when it had under consideration a subscription agreement similar to the one involved in this case. Belton Compress Co. v. Saunders, 70 Tex. 699, 6 S. W. 134.

Again, in the case of Galveston Hotel Co. v. Bolton, 46 Tex. 633, in considering a stock subscription not made with the corporation, but made after the incorporation, our Supreme Court expressed a similar view. Chief Justice Roberts, in discussing this question, said:

"A subscription of stock in an incorporated company, or in anticipation of a company expected to be incorporated, is usually in the shape of a mutual agreement, written and signed by those desiring to be corporators, or of a mutual undertaking in writing, to be bound to take a share or shares in an incorporation already created, in which the nature, object, and terms of the association are to some extent indicated. Whether in one shape or in the other, the mutual agreement, or undertaking of all of the subscribers, may constitute the consideration for the agreement, or undertaking, of each one of them, so as to make it a valid con-

tract in favor of and against each, to be carried out or enforced by the company when organized, if not already recognized. The company becomes a party to the contract, either expressly or by implication, from the terms of the subscription."

Likewise, our courts have frequently upheld contracts between parties as based upon a valid consideration which are made for the benefit of a third party, even though no consideration moves from such third party. Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063; Western. Union Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Spann v. Cochran, 63 Tex. 240; Monroe v. Buchanan, 27 Tex. 241. Neither is it essential to the validity of such contract. that the same be accepted by the party for whose benefit it was made. Bridgewater v. Hooks (Tex. Civ. App.) 159 S. W. 1004; Beattie Mfg. Co. v. Clark, 208 Mo. 89, 106 S. W. 29; Crone v. Stinde, 156 Mo. 262, 55 S. W. 863, 56 S. W. 907; 13 C. J. p. 711, § 817.

When defendant in error and his associates executed the subscription agreement, they undoubtedly had in contemplation certain advantages to be derived from being stockholders in the corporation proposed to be formed and of the consequent right to participate in pecuniary dividends therefrom. The agreement securing such advantage to the subscribers, the objection of want of consideration cannot, in our opinion, be successfully made.

We therefore recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for another trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.