## CRAWFORD v. COLEMAN HOTEL CO.
### (No. 7338.)

Court of Civil Appeals of Texas. Austin.
April 3, 1929.

Rehearing Denied April 24, 1929.

W. Marcus Weatherred and J. B. Dibrell, Jr., both of Coleman, for appellant.

Critz & Woodward, of Coleman, for appellee.

BAUGH, J. This is the second appeal of this case. Our opinion on the first appeal is found in 290 S. W. 810. A writ of error was

granted, and the opinion of the Commission of Appeals is reported in 3 S.W.(2d) 1109. Since the first trial, the original defendant, C. M. Crawford, and his wife have both died, and their son, Alex Crawford, was made defendant by agreement. On the first trial, the court peremptorily instructed the jury to find for the defendant. On the second, he instructed a verdict for the plaintiff for $5,590, being the amount of C. M. Crawford's subscription with interest.

The first appeal presented only the issue of the right of a subscriber to the capital stock of a corporation to withdraw his subscription without the consent of the other subscribers, by giving proper notice thereof, and before a charter is applied for or any expense incurred. We have not changed our views as expressed in our former opinion in this case in which we followed the great weight of authority in this country, but the Supreme Court has followed the minority rule, and that concludes the matter. Their opinion is discussed in the Texas Law Review of February, 1929, vol. VII, p. 312.

Appellant brings up for review on this appeal, in addition to the issue raised on the former appeal, defenses urged on the second trial, which were not before us on the former appeal. In the first of these he contends that the subscriber was released because of a material alteration in the scope and purposes of the corporation actually formed from that to which he subscribed (1) because he subscribed for stock in a corporation with a capital of $50,000, payable 20 per cent. in cash and the balance payable 10 per cent. monthly until paid, whereas, a corporation was chartered with a capital stock of $80,000, of which only $41,770 was paid in; (2) because a $50,000 hotel structure was contemplated when he subscribed, whereas the organizers, without his consent and over his protest decided before incorporation to erect a $90,000 building, and did in fact erect a hotel costing approximately $119,000, of which the corporation borrowed $70,000 and pledged all of said property to secure its payment; (3) because the subscription contract prescribed a corporation "to purchase site, construct and own a modern fire-proof hotel of not less than fifty rooms in Coleman," whereas the corporation was chartered "to erect, establish and maintain a hotel."

We do not sustain any of these contentions. No question of fraud or misrepresentation in securing Crawford's subscription of $5,000 is raised. He is consequently bound by the terms of the contract he signed unless otherwise released. This subscription contract, among other things, provided: "We hereby subscribe the amount set opposite our names for the purpose of organizing a corporation to purchase site, construct and own a modern fire proof hotel of not less than fifty rooms in Coleman. This subscription to be valid only upon condition of not less than $50,000 total

solvent subscriptions being obtained. When $50,000 or more has been subscribed a meeting, at which all subscribers are invited, shall be held for the purpose of selecting site and making all proper arrangement for construction of such hotel—collecting subscriptions, etc."

From the contract itself and from the evidence it is clear that a capital of at least $50,000 was a minimum contemplated, not a maximum nor a fixed amount. Whatever was reasonably required to erect in Coleman a modern fireproof hotel of at least 50 rooms was the real undertaking, and a corporation with sufficient capital to do so was manifestly intended. No contention is made that a corporation with larger capital than was required for that purpose was chartered; nor that more money was spent in such undertaking than was reasonably necessary.

What the corporation did after organization in the accomplishment of its purposes, in the absence of some fraud or bad faith, neither of which was alleged, was no defense against a subscription to its capital stock. 7 R. C. L. § 235, p. 258; 14 C. J. 627.

Nor is there any merit in appellant's contention that there was a material variance between the terms of the subscription contract and the language of the charter. The subscription contract will be construed in the light of the provisions of article 1302, R. S. 1925, subd. 44, authorizing the formation of such corporations. And it will be presumed that those executing the subscription contract did so intending to comply with the provisions of the statute prescribing what could be done. The variance complained of becomes immaterial for the reason that the original purpose set forth in the subscription contract was in fact in all respects carried out by the corporation, and the appellant is in no position to complain. There being no failure by the corporation to comply with the terms of the subscription contract, no material change in purposes for which the corporation was promoted, and no fraud alleged nor shown in obtaining subscriptions, the propositions advanced by appellant and the authorities cited to sustain them are not applicable.

The next contention raised by appellant is that involved in the former appeal which has already been concluded by the decision of the Commission of Appeals. See 3 S.W.(2d) 1109.

The remaining contention presented in several propositions is that the corporation released several of the subscribers to the contract, and that, same being a mutual contract, such releases discharged appellant. We do not deem it necessary to discuss this question at any great length. If, as held by the Commission of Appeals on the former appeal, said subscription contract was mutual and no subscriber could be released except by the unanimous consent of the others, any attempted release of him either by the directors or by the corporation would be unauthor-

ized and ineffectual, and, as above stated, would not be any defense available to appellant. Bohn v. Burton-Lingo Co. (Tex. Civ. App.) 175 S. W. 173; 7 R. C. L. 258. And, if the directors or the corporation did have authority to release a subscriber, the other subscribers, not showing themselves to have been in any wise injured thereby, would be in no position to complain. Thompson on Corporations (3d Ed.) vol. II, § 862, p. 199. Nor can the directors substitute one subscriber for another. Id., vol. II, § 857, p. 196.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.