## McCORD v. SOUTHWESTERN SUNDRIES CO.

(Court of Civil Appeals of Texas. Dallas. June 7, 1913.)

1. CORPORATIONS (§ 90*) — SUBSCRIPTION TO STOCK—NATURE OF ACTION.

Under a contract to take a certain number of shares in plaintiff corporation, then "in process of formation" and to be chartered under the laws of the state, the law supplied the condition that the concern should in fact be incorporated, and on performance of such condition the subscribers' liability became absolute and enforceable by an action of assumpsit, and an action for damages for breach of contract was not the sole remedy.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. § 90.*]

2. CORPORATIONS (§ 90*)—ISSUANCE OF CERTIFICATE—CONDITION PRECEDENT TO ACTION FOR SUBSCRIPTION.

The certificate showing the number of shares in a corporation owned by the shareholder is but the evidence of that fact, since he acquired a present interest in the corporation when his contract of subscription was executed, so that the corporation's issuance, delivery, or tender of a certificate is not a condition precedent to an action against a subscriber for the balance due upon his subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. § 90.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Southwestern Sundries Company against W. C. McCord. Judgment for plaintiff, and defendant appeals. Affirmed.

Spence, Knight, Baker & Harris and Alex F. Weisberg, all of Dallas, for appellant. W. S. Bramlett, of Dallas, for appellee.

RASBURY, J. The appellee sued the appellant in the court below, alleging in substance that appellant had subscribed to a given amount of the capital stock of appellee, and had paid the subscription in part and refused to pay the balance. Judgment against the appellant was asked for such unpaid balance. Appellant, so far as the issues raised on this appeal are concerned, answered by general demurrer and general denial. Upon trial before jury, and at the conclusion of appellee's testimony—appellant offering none except to cross-examine appellee's witness Bramlett—the court directed the jury to return a verdict for the appellee, which it did. Judgment was entered upon the verdict, from which this appeal is prosecuted.

The facts developed upon trial show that by two agreements in writing, one dated March 13, 1911, and one dated March 20, 1911, appellant subscribed, respectively, for 50 shares and 12 shares of the par value of $100 each of the capital stock of the appellee, a corporation then in process of formation, and to be chartered under the laws of the state of Texas, and agreed to pay therefor one-half cash, one-fourth in 90 days, and one-fourth in six months from the date of said subscriptions. The cash payment on each subscription was paid. Thereafter, on March 31, 1911, the corporation was chartered by the state of Texas. After incorporation appellant also paid the first maturing one-fourth of his subscription. Payment of the remaining one-fourth on both subscriptions was refused by appellant, and the suit resulted. Appellee, at the time of the suit, was "an active going concern," conducting a wholesale business at Dallas, Tex. Appellant did not deny the execution of the two subscriptions sued upon.

[1] Appellant's first group of assignments of error raises substantially two points, and under them all it may be said the proposition is first advanced that when appellant refused to pay the balance due on his subscription contract, appellee's remedy was not a suit to recover the unpaid balance thereon, but a suit for damages, the recovery to be the difference between the price agreed to be paid for the stock and the then market value of the stock, less the payments upon the contract by the appellant. We think the contention unsound in view of the facts stated, though the principle announced under a different state of facts is undoubtedly sound. Bearing in mind that appellant's contract was an express and unconditional agreement to take a given number of shares in appellee corporation, then "in process of formation" and to be chartered under the laws of the state of Texas, and to pay therefor the amount named, an accepted authority, after noting the fact that in a few American jurisdictions a doctrine prevails that, in the absence of an express agreement to pay for the shares so subscribed, an action of assumpsit cannot be maintained without first a forfeiture and sale of the shares, says: "But where the contract of subscription does contain an express promise to pay the assessments, and the conditions of the subscription have been performed, then by all the authorities an action of assumpsit or other like action can be maintained in the first instance without a proceeding to forfeit the shares, or a declaration of forfeiture, sale of them, or other equivalent act." 10 Cyc. 383. The only condition that can be said to have been a part of the contract of appellant is the condition which the law furnishes that the

concern would in fact be incorporated. That condition was performed within the month in which appellant subscribed for the shares. In fact he paid part of the subscription after incorporation. The authority just cited further holds that upon incorporation the subscriber's "liability becomes absolute." 10 Cyc. 387. Our Supreme Court, in discussing the liability of subscribers to shares before incorporation, says: "'The mutual promises of the several subscribers constitute the consideration, but the promise is to pay the subscriptions to a third party, viz., the corporation, and the promise is valid and binding, notwithstanding the corporation is to be formed thereafter.' * * * The promise * * * to take the shares * * * is undoubtedly * * * a promise, not only to take the shares, but to pay for them, to take them upon the terms and conditions set forth in the subscription paper." Belton Compress Co. v. Saunders, 70 Tex. 699, 6 S. W. 134.

While it is true that in the case cited the question of whether the contract price or the difference between the contract price and the market value of the stock was the measure of recovery was not an issue, it seems too clear for argument that the right to recover the price agreed to be paid, as there held, precludes the application of any other rule. In our opinion the rule applicable in the instant case is the one quoted by counsel for appellee from Cook on Corporations (6th Ed.) vol. 1, p. 300, as follows: ."A preliminary agreement to form a corporation and take stock therein is not a contract by the subscribers with each other, and cannot be enforced by one or more against any other, but only by the corporation. Such an agreement, not made as a step authorized by statute in the process of forming the corporation, is a mere offer to the corporation not yet in existence, and is revocable by any subscriber until the birth of the corporation, which operates as an acceptance of the offer, and thereafter the subscription, if not previously revoked, is irrevocable and may be enforced by the corporation. Such an agreement, made as a step authorized by statute, in the process of forming a corporation, is made valid by the statute, and is binding upon each subscriber from the time of signing, and is irrevocable thereafter, but can be enforced only by the corporation. The damages recoverable by the corporation upon a subscription is the amount of the subscription; and all discussion of any other measure of damages, such as difference between par and market value of stock subscribed, arises from a misconception of the situation, and disappears from the net result of the authorities."

[2] It is also urged by appellant that the judgment is erroneous for the reason that appellee did not plead or prove a segregation or setting aside of the stock to appellant, nor a delivery or tender thereof by appellee. In addition to what we have just said in reference to the binding force of an unconditional and express agreement to pay for shares of stock in a corporation in process of formation, the general rule is that the certificate showing the number of shares owned by the shareholder is but the evidence of that fact, since he acquired a present interest in the corporation when the contract of subscription was executed. It follows that the issuance, delivery, or tender of delivery by the corporation of a certificate evidencing appellant's number of shares was not a condition precedent to his payment of the balance due upon his subscription. Van Norman's Ex'rs v. Wheeler, 13 Tex. 316.

All other assignments of error are based upon the refusal of the court below to permit appellant to prove by R. S. Bramlett, appellee's secretary, that the market value of the shares of appellant was equal to their market value. In view of our preceding conclusion, such testimony was immaterial, and hence inadmissible.

The judgment is affirmed.